1

2  RICHARD HOFMAN ESQ. SBN 110692
   29219 CANWOOD ST, NO 101,
3  AGOURA HILLS, CA 91301
   Tel:    (818) 203-6777
4  EMAIL: Hofman.R@gmail.com

5  FOR Defendant

6

7              UNTIED STATES DISTRICT COURT

8           FOR THE CENTRAL DISTRICT OF CALIFORNIA

9

10

11  GLOBAL TECH INDUSTRIES GROUP      Case No.  2;24-CV-05615-HDV-MAAx
    ET AL

12                                     **NOTICE OF MOTION AND MOTION TO**
            Plaintiffs,                **DISMISS PER PRCP 12B6; REQUEST**
13                                     **FOR JUDICIAL NOTICE**

    V.
14                                     **Filed Concurrently with Requests for**
                                       **Judicial notice Parts 1-4. And a Request for**
15  RICHARD A. HOFMAN ET AL            **Judicial Notice Regarding Defendant's**
    .                                  **concurrently filed Anti=Slapp motion**
16
            Defendants.
17

18
                                       Date: -10-24--2024
19                                     Time:    10AM
                                        CTRM: HON JUDGE VERA
20                                     CR 5B 5TH FL  350 W 1ST  LA, CA 90012

21

22

23

24  TO THE HONERABLE COURT & TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

25  PLEASE take notice that on 10-24-24 at 1000am or as soon thereafter as this matter may be heard in

26  CTRM 5B ON THE 5TH FLOOR     LOCATED AT 350 W. 1ST ST, LA, CA 90012, Defendant shall

27  move the Court for a dismissal with prejudice as against All plaintiffs.

28

    1

1    This motion shall be based on FRCP RULE 12B6 and on the basis that Plaintiffs cannot

2    assert a cognizable claim herein. That the allegations of the FAC do not assert any Defamation or Trade

3    Libel. That all of the allegations are absolutely privileged by both the Litigation privilege and both the

4    procedural and substantive Anti-Slapp Statutes as well as the US Constitution..

5    Prior to filing this Motion, Defendant did meet and confer with Plaintiff's counsel

6    about all of the prospective responses forthcoming and did request a dismissal with prejudice.

7    This is reflected in his brief declaration at the end of this document <u>as well as in the Rule11</u>

8    <u>motion just served on Plaintiffs</u>. Another request for a dismissal with prejudice was also

9    provided on or about 8-30-24. As of the date this motion was first served on Plaintiffs, the action

10    has not been dismissed with prejudice.

11    Hofman renewed the request after a Nevada Judge (See Request For Judicial Notice

12    "RJN" parts 1-3 including a August Minute order finding gross mismanagement, securities

13    violation, conversion false disclosures etc against GTII management involving the same time

14    period as the allegations of the First amended Complaint herein. Despite the misconduct,

15    litigation and other privileges, anti-slapp involvement, the lack of actionable conduct, Plaintiffs

    have refused to give up the sinking ship..

16    This motion is based on this notice, on the attached motion, on the referenced declaration of

17    Richard Hofman, on the concurrently filed requests for Judicial Notice,  and on such other and further

18    evidence that the Court can consider in this matter.

19

20    Dated:

21                                    DEFENDANT IN PRO SE

22

23

24

25

26

27

28

NOTICE OF MOTION AND  MOTION TO DISMISS

1

2                          TABLE OF CONTENTS                    PG

3

4      MOTION TO DISMISS                                          3

5      MEMO OF POINTS AND AUTHORITIES                             3

6      STATEMENT OF FACTS                                         4

       PURPORTED DEFAMATORY MATTER                               10
7
       EXHIBITS INCORPORATED HEREIN BY REFERENCE                 15
8
       REQUEST FOR JUDICIAL NOTICE                               16
9
       ABSOLUTE LITIGATION PRIVILEGE                             19
10
       CONCLUSION                                                21
11
       HOFMAN  DECLARATION                                       22
12
       Exhibit 1 attached.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                       I

## MOTION TO DISMISS

 Per FRCP 12b6, as Plaintiffs cannot assert a cognizable claim and all claimed defamatory matter is absolutely privileged, subject Anti-Slapp protection and other complete defenses, the Court should dismiss this action with prejudice.

Concurrently with this filing, Plaintiff is filing an Anti-Slapp Motion. In considering these proceedings, Defendant is asking the Court to take Judicial Notice of the contents of the Anti-Slapp motion, exhibits and declarations. Hofman's opinions were offered to many GTII investors to in part keep them apprised of legal events, keep them apprised of legal events as to GTII, try to impact legal outcomes and provide GTII shareholders a voice, get input and to communicate that all to GTII management too (who were watching) about the various ongoing litigation  and legal matters.

## MEMORANDUM OF POINTS AND AUTHORITIES

Per FRCP 12(b)(6) Defendants are entitled to fair notice of the claim and the grounds. Conley v Gibson (1957) 550 U.S. 544. The pleading must have something more alleged than just creating a suspicion  or hint of a legally stated claim. See Daniel v. County of Santa Barbara 288 F.3rd 375 (9th Cir. 2002). Whether a challenged statements asserts the requisite defamatory meaning is a legal question. See Summit Bank V. Rogers (2012) 206 Cal App 4th 669.

Per CAL. Civil Code sections 44, 45a & 46 Defamation  requires—A 1. Publication of a 2. statement of fact 3. .Not privileged. 4.Has a natural tendency to injure or which causes  special damages.. Defendant asserts he is covered by the first amendment of the constitution and fair comment privilege too. That provides a defense too.

Defamation only applies to something that can objectively be proven to be true or false. See Savage v Pacific Gas & Electric Co. (1993) 21 Cal. App 4th 434. Epithets, contemptuous expressions have all been afforded protection. See FerLauto v. Hamsher (1999) 74 Cal. App 4th 1394.  ). Where the speaker prefaces his comments with more cautionary language, the is more likely to be construed as opinion. See Baker v Los Angeles Herald Examiner (1986) 42 Cal. 3rd 254. California also accepts the substantial truth doctrine. Not every word has to be exact in the statement or absolutely correct. See Jackson v

1    <u>Mayweather</u> (2017) 10 Cal. App 5th 1240. Finally, statements on media involving statements of public

2    concern may also be protected. See <u>Eisenberg v. Alameda Newspapers</u> (1999) 74 Cal. App. App. 4th

3    1359. The <u>Ferlauto</u> case cited above also appears to set up a absolute defense for Defendant (Banter

4    about litigation etc). As such, the motion should be granted without leave to amend and with prejudice.

5

6                    **<u>SUMMARY OF FACTS</u>**

7       Defendant, a licensed California attorney in good standing, is also a shareholder in Global Tech

8    Industries Group Inc ("GTII"). GTII was an incubator for fledgling companies and would provide a

9    completely compliant vehicle. Revenue would roll into GTII and the price action of the stock could be

10    positively affected. In 2022, 2023 and up thru today, as far is it is known, **<u>GTII has generated no</u>**

11    **<u>revenue and its stock price has tanked</u>**. At the same time, as will be reflected below, GTII has engaged

12    in gross mismanagement, self-dealing, misappropriation of company assets, securities violations and

13    other such misconduct.

14       Up through August 1, 2024 the CEO of GTII was Plaintiff David Reichman ("DR"). As reflected in a

15    2023 filing, DR was not only the CEO of GTII but also the CFO and Accounting officer who had run a

16    tax practice prior.

17       Although the company had and was generating zero revenue, in or about January 25, 2023, the Board

18    issued approximately 65 million shares (valued at nearly 100 million) to insiders and their interests. DR

19    apparently gave millions of shares to foundations that he controlled which may have resulted in personal

20    net tax benefits for him and dilution or depression of the stock price for ordinary shareholders.

21       Based on a representation by Plaintiffs' counsel in Court in Nevada, these 1-25-23 issued shares were

22    provided to insiders for an improper purpose <u>for a future transaction that might close</u> (**<u>But prior to it</u>**

23    **<u>closing and it never closed</u>**).

24       Coincidentally, at or about the same time as this obviously improper issuance of these shares, the

25    existing auditor, Pinnacle, elected not to renew their engagement with GTII and DR. It casts doubt when

26    the auditor leaves an engagement. Moreover, in June 2024, almost 18 months after being issued, GTII

27    cancelled approximately 36 million of the nearly 65 million improperly issued GTII shares (did not

28    cancel all of them with no explanation) & acknowledged they <u>were inadvertently or erroneously</u> issued.

When the Nevada Judge heard the above, along with the prepayment of the shares, he was incensed.

In or about April 11, 2023 (notice was not provided and then without transparency) that the OTC downlisted GTII for reoccurring problems with inaccurate or insufficient disclosures regarding insider transactions and beneficial ownership. However, notice of this was not provided to shareholders until May 2023 and at that time, and as of today, not only have Plaintiffs not corrected it **but they have never disclosed what the specific factual issues are.** Perpetuating that problem, and as reflected in a 4-9-24 PR with out specifying what it was nor ever indicating it had been corrected, it was admitted that **GTII under management had several ongoing deficiencies in both its current structure and day to day operations**. The statements offered by GTII in the PR are an admission which validates Hofman's stated opinion. GTII attorney Jack Fattal also indicated that GTII had not adhered to all corporate formalities.

In the Nevada complaint filed against DR and other insiders on June 27, 2024 and still pending in which current Defendant is a plaintiff, **(which has resulted in a minute order granting a receivership and recognizing gross mismanagement—See RJN Part 1 NO 1 especially pg. 2 and RJN Part 2 &3** ) there are findings of GTII securities being given to suspect foundations, family members, directors and even to the **CEO's mechanic and masseuse**. Apparently, GTII shares were questionably utilized to purchase real estate that should too belong to GTII shareholders. (RJN Part 1 No 1).

It should be noted that on 4-8-24, in the California Superior Court Hofman filed a breach of Fiduciary duty action against GTII management .dismissed without prejudice when Hofman joined the Nevada action. (See RJN Part 1 No. 2). So at least from 4-8-24 thru the current there has been active litigation amongst the parties involving the same misconduct. There was much discussion and preparation before that date. That requires imposition of the absolute litigation privilege and an absolute dismissal.

. It seems no coincidence that the prior auditor left GTII during this time. Likely DR, in or about March 2023, personally selected the replacement auditor (as he was a tax expert and was the CFO & Accounting Officer) and chose Borgers. Borgers was such a scam outfit, that in or about May 2024, after having acknowledged literally making up work product, it was shut down by the SEC (See RJN Part 4 Pg 16). Luke Rahbari (LR), who was brought in late 2023 to get things right, made COO effective April 1, 2024, **was brought in to keep GTII fully compliant in filings** amongst his most important tasks.

 In or about July 2024, GTII was downlisted to in essence non tradeable status (expert market) **for being non-compliant** in their security filings. As of today, they are still non-compliant and nearly all

1    shareholders have had no access to their own stock . LR has taken **no legal action,** despite the

2    "devastating" findings of the Nevada Court, to protect the interests of GTII shareholders.

3    In or about the last quarter of 2023, several potential suitors of GTII as well as many connected to

4    those suitors, reached out to Defendant. They expressed concerns about the status of DR, whether GTII

5    really wanted to do any deals, that GTII seemed to find reasons not to do deals, that they were not easy to

6    work with, zero revenue, selling shares,  the capacity of DR, wasting people's time, etc. All that

7    Defendant  heard was negative and suspicious about what was going on at GTII. As Defendant was also a

8    lawyer, starting in late 2023 and early 2024,  in light of the status of GTII and its cratering stock,

9    Defendant decided to reach out to .GTII management and find out what was going on with regard to all of

10   the failed acquisitions. It was his intention,  that if he did not get the answers he was looking for, being a

11   lawyer, that he would try and pursue ;legal action for the benefit of other shareholders and which did

     ensue in early April 2024.(RJN pt 1 NO 2)

12   As of late 2023 or very early 2024, having been involved in cases with fraudsters, Defendant started to

13   suspect that something was being hidden by GTII management and there was improper conduct ongoing.

14   On or about 2-6-2024 (prior to any of the allegations in the FAC) Hofman sent a legal demand letter to

15   GTII's attorneys, DR director Kathy Griffin, GTII, later Luke Rahbari and other directors (Ex 1 Pg 1 to

16   ANTI-Slapp)) . So from February until after Defendant's complaint was filed 4-8-2024, not only did

17   Defendant have direct contact with GTII, **but that included providing  a copy and case number of**

18   **Defendant's complaint against the directors of GTII filed on or about 4-8-2024** . So prior to filing

19   their defamation action, Plaintiffs had received a legal demand letter, several communications referencing

20   legal action, a filed complaint related to the matters at issue, knowledge of the June 27, 2024 Nevada

21   action, yet despite that and despite the extremely broad litigation privilege in California,  all parties  still

22   went forward **in knowing direct contravention  of the law**.

23   In late February 2024, in light of Hofman's demand letter, he heard from an attorney shareholder of

24   GTII who suggested Hofman wait to proceed with litigation until early March 2024 before undertaking

25   any legal action. He was not complementary of existing GTII management but indicated that some deal

26   was being contemplated by DR that might resolve this matter. In light of that request, Defendant held off

27   and formally agreed to hold off pursuing a Breach of Fiduciary duty lawsuit until early March 2024.

28

NOTICE OF MOTION AND  MOTION TO DISMISS

No deal was forthcoming. However on or about March 3, 2023 a new attorney on GTII's behalf, Jack Fattal, contacted Defendant and asked Hofman to hold off pursuing any legal remedies against GTII and management as their 10K would be timely filed on 3-31-2024 and would address his concerns. Moreover, that the 10K would provide clarity as to the ongoing acquisition activities and that management was working diligently to complete a deal and realized that an acquisition was needed to benefit shareholders.. Prior to March 31, 2024, Defendant had numerous communications with Mr. Fattal where Hofman expressed concerns but was convinced by Fattal and GTII to wait for the 10k on or before 3-31-24 because that would clarify everything ...

Defendant has a small tube channel in which he discusses a myriad of legal subjects including Tesla, MMTLP, the Supreme Court, Arbitrations, legal proceedings, Alpine, GTII, Pastrami and other things. Once Defendant had gathered enough information to suspect legal shenanigans, he carefully did video's offering opinions about what might be going on. **Although Defendant, as it turns out, was 100% correct in** his concerns about the misconduct perpetrated by GTII, on his videos he was regularly cautionary urging whoever watched to not rely on anything said, it was opinion only, do your own analysis, etc. The name of Hofman's channel "Knot Legal Advice" says as much also not to rely on Hofman's opinions.

3-31-24 comes and no promised 10K (contrary to what Fattel represented on multiple occasions). Hofman continued communication with counsel and the board and offered questions and concerns—**All of which (dozens of inquiries by Defendant herein) were unanswered**. 4-1-24 comes and an extension request is posted-not disclosed . On 4-16-2024 the promised 3-31 10k is finally but "defectively" filed. It is a disaster. Still no revenue, seeming gross distribution of shares, increased dilution, huge losses, cash expenditure issues but **no coherent notes and odd signature**. With no revenue, and although losses for 2022 were on the order of 13 million, in 2023 it approached 90 million and the cash position was significantly impaired (and there was no acquisition, the prior downlisting was not corrected, no evidence that an acquisition was imminent, no explanation for insiders giving themselves tens of millions of shares while there was no revenue). See RJN Part 4 Pg 1-14.

In light of the failure to file the 10k on March 31 as represented, and all of the other circumstances, Defendant's complaint for Breach of Fiduciary duty Case no:    24 STCV08715    was filed on or about April 8, 2024. The Court is asked to take Judicial Notice of that complaint (See RJN Part 1 No 2 ).. In

April 2024 Defendant provided a copy of his complaint, to both of both of GTII's counsel as well as DR and the board. . Defendant continued to ask questions about issues that arose in the documents like the enhanced losses, enhanced dilution, where is the cash, etc. up thru today. **At no time has  the Board ever answered a single question.** No whiff of any acquisition.

April 9, 2024 it is indicated that LR will take over as CEO effective 5-1-2024. It also refences that a chief obligation of LR is keeping GTII compliant with its filings. **Without explaining what it was, the PR also admits to numerous deficiencies in GTII structure and the day to day operations of GTII**... As GTII was again downlisted in or about July 2024 by OTC a second time (this time for further noncompliance while LR was COO and is now CEO and neither Downlisting has been corrected  GTII is virtually untradeable in the OTC expert market. Moreover, neither LR nor anyone else at GTII has ever disclosed the facts behind the first downlisting in April 2023 or more importantly corrected it.

Even though DR was CEO up through 7-31-2024, as reflected in a July 2, 2024 employment agreement (-See RJN PT 4 Pg 27).   LR was also given over 24 million shares  of stock plus was **indemnified**) but his starting date  **was altered to 4-1-2024** . Moreover, the investor relations website too, then and now, contains false information. Defendant noticed the false information there too and that caused him further concerns about GTII management..

Early May 2024, auditor Borgers, GTII's auditor chosen in March 2023 by GTII's tax expert, CFO and Chief accounting officer to mysteriously replace their prior auditor, is eviscerated and shut down by the SEC for operating a scam..

Starting either in late April or early May 2024, <u>further confirming his opinions,</u> Defendant became aware of another group who wished to initiate litigation against the GTII board. Defendant is a plaintiff in that Nevada action along with approximately 200 other plaintiffs and has been assisting in that regard. The Nevada action was filed in or about June 27, 2024 for breach of fiduciary duty etc. and for imposition of a Receiver and a TRO (SEE RJN Part 2 No.3 ). Just prior to June 27, 2024, in light of  the Las  Vegas Action, Defendant dismissed his California action without prejudice to join the Nevada one.

While related litigation was pending, and already subject to the litigation privilege and in an attempt to shut up Defendant and intimidate him,  a frivolous lawsuit was filed against Hofman. Initially, while litigation was pending, they emailed Hofman ,**addressed to his law office**, a demand for a retraction. Although the statements attributed to Hofman although confusing reflected truth, in fact, the way they

were offered, without context etc. it was impossible to understand the concerns expressed in the ambiguous 6-21-2024 letter.

The letter was addressed to **Defendant's office** and was emailed to him. Rather than physically deliver it to Defendant's office as the letter was addressed,  **on Sunday 6-23-24, at 630am, Defendant was accosted by a process server who delivered another copy of the 6-21-24 letter in a threatening manner (although when confronted on the street he indicated he did not know why he was delivering the letter to the home).** The fact that Defendant was targeted at home on a Sunday morning at an address not listed was a threat designed as intimidation. Defendant perceived it as a threat of physical violence . Hofman let GTII's counsel know about his concerns.

Rather than responding to Hofman's request after trying to intimidate him, a lawsuit was filed for purported defamation and trade libel. **In light of his concerns for the safety of his family and not knowing the mental state of DR and other GTII agents, Hofman unilaterally waived service to not permit counsel to harass him again though service.** However the complaint was more deficient then the inept retraction letter. There were now less quotations, still no context and the complaint  suggested a nebulous comment  without being able to direct anyone to the vague claim  within a 28 min video discussing multiple topics . The lack of context and quotes and names  amongst other defects  made the complaint unintelligible. The jurisdictional paragraph was also defective.

Following extensive oral argument,  in the lawsuit in Nevada to impose a receivership on GTII by reason of the misconduct of GTII, DR, other board members and ALL Management" **the Court in its detailed minute order did not only impose a receiver and TRO but found that GTII management grossly mismanaged the company, failed to file required disclosures, violated securities laws,  filed false and misleading disclosures,  personally enriched themselves at the expense of shareholders, converted company assets,  improperly issued shares to personally benefit friends and family, put GTII in danger of being delisted or worse, violated federal law, endangered GTII's ability to raise capital etc**. A true and correct copy of the minute order is attached to the RJN Pt 1 No.1  The judge was angered when it was disclosed that insiders prepaid themselves on a deal that had not (and did not) close. Moreover, he was incredulous when told that the cancelled shares (what happened to the non-cancelled shares) had been erroneously or inadvertently issued.

1    In essence, everything that Hofman asserted and more and much worse than might be occurring was

2    confirmed to a factual conclusion by the Nevada Judge.  Clearly whatever Hofman claimed was not only

3    protected opinion, protected by the litigation privilege, but truthful too. Despite that, and despite

4    Defendant's multiple requests that Plaintiffs in the instant action dismiss the action, Plaintiffs refuse.

5

6                                    **Purported Defamatory Matter**

7

8       **Although**  Notwithstanding the litigation privilege which provides an absolute defense, besides a

9    concurrently filed anti-slapp motion and motion to dismiss, the 20 individual allegations (Exhibit 1

10   attached hereto) are not actionable.

11      It should be understood that this is the third version of Plaintiffs' claims and it is impossible (especially

12   in light of the Court filings and collateral estoppel impact of the Nevada action) that any proper claim can

13   be asserted. In other words (besides collateral estoppel or res judicata) if a Judge found Plaintiffs herein

14   culpable, Hofman's investigation  could not be negligent nor malicious by definition.

15      The FAC  primarily refers to GTII management (not by name) and not to GTII itself. Thus, the

16   claimed statements offered by Plaintiffs do not slander or libel anyone. There is no reference to who or

17   which type of GTII management is being mentioned. On the items referenced, no name is attached hence

18   no ACTIONABLE STATEMENT. All of the statements occurred during the time litigation weas

19   pending. Only a very few of the indicated references even have quotes suggesting that the other

     statements may not be accurate (and this is the 3rd time).

20      Even if the allegations are correct, Substantial Truth is a defense. RJN Part 1 , Part 2 & 3 establish

21   as a matter of law that Hofman was accurate (and certainly prudent.) Moreover, RJN Part 4  showing

22   hiring of a failed auditor, downlisting due to disclosure failures, issuance of millions of shares when the

23   company generated zero revenue and lost millions, establishes the truth.

24      In Exhibit 1 attached hereto, Defendant has numbered the 20 purported allegations referenced in

25   the FAC. Recall that counsel first set it out in a letter, amended it to be more confusing in a complaint and

26   corrected and added more deficiencies by filing a FAC and adding new claims and a new plaintiff despite

27   an agreement to the contrary. Yet the allegations if even understandable are obviously opinion, and

28

                                             10
                           **NOTICE OF MOTION AND  MOTION TO DISMISS**

and were proven correct. Anyone with a legal background who experienced the facts that Hofman did as to the actions of GTII management would have concluded as Hofman did in his opinions **as the Nevada Court confirmed**. The Court's findings of misconduct also provides a complete defense to the allegations BUT IT IS THE FAC that cannot generate more than skeptical assertions (after 3 attempts).

1.   As to items 1 thru 11 **only No 2 contains even a portion of a quote**. Even if accurately quoted each statement is either opinion, not clear or discernible, true and not harmful or just non actionable opinion mostly, as in all of them, about generic management.ac. The rest, despite Plaintiff's 3rd attempt to state a cognizable claim again submits an unintelligible mess. This is substantially different and less specific than the imperfect retraction letter provided in June and delivered in a threatening way to Defendant's home (None was ever made re LR). With regard to the references to looting, dilution, violating fiduciary duties, etc. in addition to everything else stated herein below, RJN Part 4 Pg 1-14 the financials reflect such dilution, huge increased losses, substantial reduction in cash while generating zero revenue. The minute order of the Nevada Court confirms the opinions (how about the late cancellation of only a portion of admitted erroneously issued shares by GTII management and the 4-9-24 admission of operational deficiencies?. How about the July 2024 downlisting for noncompliance.?).

Moreover, per the individual statements it cannot be detected which GTII management figure is being referenced in the apparent claim . So no individual has a claim. No trade libel can occur because the reputation of the company was not harmed nor targeted and the bad reputation was deserved. **The company stock cannot even trade because management dropped the ball and produced zero revenue and has now been downlisted twice**. Their auditor was a complete Sham. They improperly gave themselves tens of millions of shares of GTII. What happened to the Cash? That is after getting delisted a second time **for noncompliance** (the most important matter that LR was to prevent). If GTII is noncompliant and has zero revenue why would anyone like LR want to get involved with them? Seems very odd..

All of these actions which harmed GTII and made it now **non tradeable** also break any possible causation chain even arguably even if Defendant's statement of opinion were even possibly actionable. Moreover, even if the actions were not protected, there would be no harm

1    <u>understood and cautioned as much</u> on social media, true and not harmful or damaging and cautioned

2    generally as such by Defendant..

3    Furthermore, there are no proper allegations of publication nor can there be. There is no evidence nor

4    can there be a legitimate allegation that anyone who watched knew what GTII was or DR or LR. There

5    cannot be any real claim that anyone was watching the particular portion of the video that is purportedly

6    implicated. Certainly nearly all people do not <u>watch the entirety</u> of Legal related videos let alone knew <u>or</u>

7    <u>understood</u> what was said. If no one heard it and or did not understand seemingly there is no required

8    publication. Plaintiff has no way to establish that required element. Moreover, if in fact people were

9    listening to Hofman's opinions about GTII while GTII was distressed, its because they already had bad

10    opinions about GTII and there cannot be any harm by definition. Moreover, most if not all of the 20

11    allegations are  provable one way or another and thus  nonactionable by definition.

12    Items 1-5, 7-13 (like all of the purportedly published natter). all refer to a time when there was

13    ongoing litigation involving claims of Breach of fiduciary duty brought by Hofman. Defendant also

      incorporates by reference  RJN the Anti-Slapp motion filed concurrently herewith.

14    No 6 was apparently sent after the demand letter and is covered by the litigation privilege also..

15    Moreover, besides being opinion and true  it was never received as it was bounced back by that email

16    address.

17    Items 14-20 are all about LR and related to a time whereby not only was there ongoing litigation in

18    Nevada resulting in a receivership but this is part of the litigation initiated against Hofman. Hofman does

19    not see how they can be objectively Harmful to LR (again LR is also a public figure). So if LR was added

20    as a new party to existing litigation,   allegations asserted are protected by the litigation privilege as well

21    as  the Nevada ongoing action and Hofman's retained claims in California, anti-Slapp considerations and

22    the first amendment of the constitution  Moreover, not only has the Court in Nevada confirmed Hofman's

23    opinions,  **but that is collateral estoppel as to the issues** of misconduct of GTII and management which

24    establish gross mismanagement by GTII. Moreover, the Nevada action in which Hofman is a party was

25    and is ongoing and provides separate protection to Hofman under the litigation privilege.   <u>Nevada did not</u>

26    <u>exempt LR from the misconduct</u>.

27    Besides everything else (and although both DR and LR—who appears on TV and are public figures

28    governed by a higher malice standard)  Hofman's actions in coming to his opinions were done prudently

and no damage.  A reputation worth zero cannot be harmed. Also, that would seemingly also defeat any **monetary diversity jurisdictional requirement**. Defendants cannot properly assert the minimum required Diversity damage minimum.

So no individual is mentioned, all of the allegations are generally vague and non specific and sometimes confusing at best. GTII had no revenue and was failing anyway, it got subsequently downlisted again, admitted to operational deficiencies, lost its auditor,  it is covered by the absolute litigation privilege, it is true, it is opinion only so cannot possibly be actionable. Plaintiffs present Hofman's purported opinions, without context or quotes, and in an unintelligible manner

Interesting that paragraph 22 of the FAC, affirms that  all statements offered against Hofman were false but the record says otherwise.  For example, <u>No. 1</u>, first claim asserts dilution. We know that occurred because the financials state that, because 36 million shares had to be returned and cancelled after the fact, because the Judge in Nevada found that etc.

 <u>NO. 2</u> looted the blank out of the company (if actually said and still <u>opinion not fact as is the general issue throughout</u>) the 10k (RJN Part 4 Pg 1-14) says that and the Court in Nevada asserted that even more strongly. **How about the admission of prepaying insiders with shares before a deal even closes**? How about the continuing sale of shares by insiders despite no revenue and numerous intentional acts of misconduct? Where is the cash?

<u>NO 5</u> for example, again not a quote and <u>likely not said in the manner asserted</u> if at all, references securities fraud. The minute order of the Nevada Judge after the fact supports just that.

<u>NO 6</u>-This was never published as GTII states. Although GTII obviously has misled investors by a lack of transparency, <u>what is a systematic attempt to mislead shareholders</u>? Pure opinion related to potential litigation.. That is not a provable fact one way or the other. It is solely a statement of opinion that the facts support and turns out to be generally true no less.

**NOTICE OF MOTION AND  MOTION TO DISMISS**

No 12 identifies DR and although it offers a confusing partial quote, even if not said as stated, even before the Nevada Court emasculated GTII management and specifically DR, finding not only improper purposes  but conversion of GTII  assets and other misconduct ,but what about the cancellation of 36 million inadvertently and erroneously issued 18 months earlier (and what about the shares not cancelled). What about the attempted intimidation of Defendant by Plaintiffs? The opinions and conclusions appear to be completely justified even if the allegations are virtually incomprehensible..

NO 13.Alledegly listed on X, asserts the opinion that management is trying to let GTII die **(clearly an opinion-moreover, people on  X . You tube and social media know and understand that same is an opinion forum and not fact. That is especially true in the instant where Hofman in his videos constantly and regularly warns viewers not to rely on what is stated.**) The second part of the purported quote that they claim is false is that "They did not do their last filing.**' That is a matter of fact**. GTII has been downlisted again for not doing there 10q filing.

No's 14 to 18 & 20 deal with Mr. Rahbari. First it must be noted that counsel snuck these allegations in despite a contrary agreement. 16, 17 18 & 20 do not even purport to quote Hofman. **Recall that no request for retraction was made as to the public figure Rahbari.** As is a problem with the slim complaint filed herein, it's impossible to ascertain where in a **28 minute video a non-quoted provision arises from** . Purely unintelligible and incomprehensible (and still covered by the litigation privilege). As despite counsel having at least 3 occasions to assert it coherently it still has not been (further made irrelevant by GTII letting the company get downlisted and making it untradeable and impacting the stock price to virtually zero). **Moreover, as is the problem with all of these allegations they do not objectively cause harm to LR's reputation and are not of a material nature to be actionable**.

No 14 seemingly has quotes but where that can be found and the context is not ascertainable from the pleading. Again in paragraph 22, counsel falsely claims that all is false. So is asserting

Rahbari is not qualified? That Rahbari is not experienced? He is not with Equity Armor? That Hofman did not have a personal perception about EAI.? If GTII doesn't believe Rahbari is qualified or experienced why was he hired?. If they claim he is, why are they claiming all that is asserted is false in paragraph 22 of the FAC?. The line asserts it's Hofman's perception. How can that not be opinion based? Substantial truth  (LR officially started with GTII in 2023) is a complete defense.

No 15-Notwithstanding that it is absolutely privileged,  what is the context, how is it false and even if it is not true **how is it harmful**? There is no reference to illegal activity. No claim that the hedge fund is engaged illegal activity. Where is the harm? This is a reoccurring problem in the entirety of the FAC. Not only are actionable allegations not asserted but no harm can flow from the allegations or can be proven even if not absolutely privileged.

No 18 & 20- Again no quotes nor context so completely unintelligible (although absolutely privileged and protected by the constitution) and  is pure opinion and  correct. DR hired LR and there is an indemnity agreement and Rahbari (SEE RJN Part 4 Pg 27-28) is in line to get upwards of 34 million shares by managing and seemingly shielding DR. LR has not sued DR despite obvious misconduct impacting GTII by reason of DR's actions  and despite LR's knowledge of same.

NO 20 Again no quotes nor context so completely unintelligible (although absolutely privileged and protected by the constitution as all are the claimed statements are). Moreover, the 10k as supported by the Nevada Judge, and the failure of GTII management to address this before,, supports the concern about missing cash (that might exceed 4 million). There was a dramatic drop in cash on the financials between 2022 and 2023. **Despite literally dozens of inquiries from Hofman, GTII management elected not to respond to any factual inquiries. This further enhanced any concerns**. Statements even if of fact only need to be substantially true not true word by word. See RJN Part 4 Pg  1-14.

NOTICE OF MOTION AND  MOTION TO DISMISS

1

2                              <u>REQUEST FOR JUDICIAL NOTICE</u>

3

4        Filed herewith is a Request for Judicial Notice (RJN). All documents are public documents

5    generated in the Court system or from the Government. Defendant also asks the Court to take Judicial

6    Notice of the Anti-Slapp Motion filed concurrently herewith. They include:

7    RJN Part 1

8        1. 7-26-24 **<u>Minute order granting the receivership based on Gross mismanagement,</u>**

9    **<u>Conversion, false disclosures, improper distribution of stock, securities violations , personally</u>**

10   **<u>enriching themselves at the expense of shareholders, putting GTII in danger of being delisted or</u>**

11   **<u>more, issued fraudulent financial disclosures, caused GTII to lose nearly 100 million dollars in 2</u>**

12   **<u>years etc.</u>**

         2.  4--8-24 Complaint filed by Hofman against DR Breach of Fiduciary Duty Etc etc.

13   RJN PART 2

14       3.  6-27-24 Verified complaint in Nevada against GTII involving the same time period and issues

15           referenced in the Hofman action.

16   RJN PART 3

17       4.  7-22-24-Exparte motion for appointment of a receiver etc. It asserted a multitude of misconduct

18           that  would entitle Plaintiff shareholders, including Hofman, to relief.

19

20       Even if there were no other complete defenses to plaintiffs' claims, such as the litigation privilege

21       or anti-slapp protections, applying the ruling of the Nevada Court involving the same parties and

22       same issues  is collateral estoppel. Moreover, it establishes as a matter of fact and law that even if

23       Plaintiffs' pleading had not been so deficient or based on harassment and threats, they would all

24       be defeated as what was alleged is true and opinion and not of the nature to be actionable..

25

26       RJN Part 4

27

28

**NOTICE OF MOTION AND  MOTION TO DISMISS**

5.April 16, 2024 relevant portions of the 10K annual filing. Pgs. 7-8 reference the auditor issue and downlisting to pink sheets (last downlisting was to expert Market in July 2024). Pg 9 only 2 employees. Pg 15 reflecting operations shows a huge deterioration in one year with no explanation of why Professional expenses, for example, increased by millions.

Pg 18-20 the balance sheet etc. shows huge increased losses (with zero revenue)

Pg 21 shows huge dilution of stock of approximately 45% in one year.

Pg 37 shows nearly 65 million shares of stock given out on one day with a value approaching 100 million dollars (with no revenue). Recall that 36 million approximately of these shares were cancelled a year and a half later on the squirrely basis of being inadvertently and erroneously issued. What about the shares not cancelled to date? Counsel in Nevada admitted that the cancelled shares were given a head of time to insiders on a deal that never closed.

Pg 47 asserts DR's background and establishes he should have known what was going on as to tax and accounting and Borgers.

Pg 54 Non producing management being paid large sums

Pg 64 **The signature page.**


**6.**MAY 2, 2023 (DATED 4-10-2023)-Delayed  notice of downlisting to pink sheets (Later to more unavailable Expert Market) due to continuing concerns on the accuracy or adequacy of the Company's disclosures including its reporting of insider transactions and beneficial ownership. This has never been corrected and caused Hofman great concern .


**7.**May 10, 2024 dated  8-K where there is disclosure of the Borgers auditing fiasco. Recall DR was the CFO and Accounting Officer with a tax background when their prior Auditor departed and someone at GTII made a horrendous replacement choice. This caused Hofman further concern.


**8. July 2, 2024 dated 8K.-PGS 1-5  references the hiring of LR as COO and future CEO. The RELEVANT PORTIONS OF THE ATTACHMENT TO THE 8K (A PORTION OF THE 37 PAGES ARE PRESENTED)**

NOTICE OF MOTION AND  MOTION TO DISMISS

Pg 27 for example indicates ,at the top, that now retroactively that the effective date of employment is April 1 (not the prior referenced May 1). Additionally the CEO status was conditioned on the GTII dividend. Since the date of the July 2 employment letter, Defendant is not aware of any action taken with regard to the Dividend to move it forward in any meaningful way. Pg 28 describes the nearly 34 million shares of GTII that LR could obtain quickly with very little if any performance. (LR has already received 8 million shares for undefined reasons).

**Recall since 4-1 when LR began officially, a fraudulently signed 10k with abusive details was disclosed, GTII's auditor was extinguished, GTII was downlisted to expert market due to noncompliance, a Judge in Nevada found that there was gross mismanagement, conversion etc. by management, etc. The website still professes false information. No one has corrected or disclosed the basis of the original downlisting nor the deficiencies noted on the 4-9-24 PR etc.**

Pg 30 is an indemnification agreement of LR from GTII and DR.

The documents referenced in the request for Judicial Notice establish as a matter of Fact absolute immunity from liability due to the litigation privilege,  full protection from the First amendment of the Constitution and per the California Anti-Slapp statutes amongst others, Notwithstanding the fact that all that was said was true and or harmless.
 The SEC filings reflect irregularities and a false on the 10K along with horrendous performance with dilution, confirms the initial downlisting disclosed late by GTII management on May 3, 2023 due to repeated problems re disclosures as to insider transactions and beneficial ownership. **<u>Why  has that never been explained by GTII management</u>**. Why it has not been corrected, in light of the near fatal July 2024 Downlisting to Expert Market.
 The irregularities in the dates of LR's employment along with a seeming lack of performance once he was on the scene, casts doubt why someone like LR should be afforded nearly 34 million

**NOTICE OF MOTION AND  MOTION TO DISMISS**

1    shares. The fact that there is an indemnity agreement suggests a potential conflict of interest

2    between GTII shareholders, DR, management and  LR.

3

4

5                   <u>ABSOLUTE LITIGATION PRIVILEGE</u>

6

7        The action filed by Plaintiffs against Hofman under diversity jurisdiction, is specifically

8    governed and controlled by the California litigation privilege. See for example <u>Federal Rule of Evidence ,</u>

9    <u>Rule 501.</u>  (See also the fair reporting and common interest privileges Civil Code 47C & D also providing

10   immunity for Hofman also asserted herein).. The purpose of the privilege (which applies directly to the

11   instant action) is to **permit parties free access to the Courts without fear of being sued and harassed.**

12        The absolute litigation privilege applies to any publication or broadcast having any connection to

13   any judicial proceeding involving the maker. See <u>Civil Code 47</u>. Such communications provide absolute

14   immunity. See <u>Albertson V Raboff</u> (1956) 46 Cal. 2d 375. It seemingly applies to all causes of action

15   other than malicious prosecution. See <u>Silberg v Anderson</u> 50 Cal 3d 216 (1990). It even applies to

16   fraudulent, perjurious, unethical or illegal comments. See <u>Kashian v Harriman (2002) 120 Cal Rprt 2d</u>

17   <u>576.</u>. . **Any doubt as to whether the litigation should be applied should be decided in favor of**

      **applying it. See Home Ins Co v Zurich Ins Co 96 Cal app 4th 17 (2002). (emphasis added)**

18        The fact that litigation is merely contemplated, like in a pre-demand letter, triggers the litigation

19   privilege. In the instant case, based on the filings, prior to 2-6-2024 Hofman contemplated litigation  but

20   his 2-6-2024 demand letter (See Exhibit 1 Pg 1 in Anti-Slapp) starts the protection at latest per <u>Aronson v</u>

21   <u>Kinsella (1997) 58 Cal. App 4th 254</u>. <u>Kupec v American International Adjustment co (1991) 235 Cal. App</u>

22   <u>3d 1326</u>  extended the privilege to pre litigation letters and statements made in attempting to, but not

23   succeeding, to adjust an insurance claim.  **The privilege is treated extremely broadly and when in**

24   **doubt  it must be applied**.

25        As is evident at latest from the 2-6-24 demand letter  thru the filing of its Breach of Fiduciary Duty

26   lawsuit on or about 4-8-2024 (a time period in which none of the claimed 20 statements referenced in

27   Plaintiff's 3rd try had even yet to be published if ever), there was significant discussion between Hofman

28

1    and counsel for GTII with regard to potential legal action. It is specifically referenced on multiple

2    occasions.

3        All the discussions, all the efforts, everything referenced or published was designed to get GTII to do

4    the right thing, to do an acquisition and to get rid of existing management amongst other goals and were

5    connected to legal matters per the privilege. The fact that Hofman was serious about the legal claims is

6    evidenced by Hofman filing the lawsuit and then joining a second lawsuit. It wasn't just the threat of

7    litigation; it was actual litigation.

8        Hofman's lawsuit   (RJN Part 1 No 2.) was for breach of Fiduciary duty against GTII management

9    and related directly to the purported statements asserted against GTII and plaintiffs at issue throughout. In

10   late June 2024, resulting in the receivership and findings against management for gross mismanagement

11   and worse, Hofman was one of the plaintiffs proceeding against GTII and management for breach of their

12   duty covering the same period as Hofman's California action. Then the instant action was filed and then

     amended.

13       All claims relate to similar time periods and are directed at the same or similar purported misconduct

14   of GTII management. Thus, although the privilege would logically be extended from 2-6-2024 thru today,

15   clearly during the time period that Plaintiffs in the instant claim liability for false statements, all occurred

16   during ongoing and related litigation. In fact, if Rahbari's claims were not related to the ongoing litigation

17   he would have filed a separate action (but  a privileged situation too).

18       In summary, the purported statements were made with regard to judicial proceedings, involving

19   Hofman as a litigant or prospective litigant, about legal proceedings with the intention of advancing an

20   objective of getting rid of management and getting a deal done amongst other goals. The CEO and CFO

21   has left. Thus, even if the purported statements were clearly and coherently pled in the FAC (which did

22   not occur herein either) they are all barred.  This privilege of protected speech also became a sanctionable

23   Slapp action designed to improperly restrict Hofman's rights of free speech..

24       The extent and breadth of California litigation privilege law is obvious and extensive and extremely

25   pro finding application of the privilege. Plaintiff herein was aware of the Las Vegas matter (they

26   unsuccessfully  opposed application of the receiver) and their own lawsuits.  GTII, management and their

27   attorneys received the Hofman lawsuit on or about 4-8-2024. The fact that notwithstanding the other

28   defenses (Anti-slapp, truth, opinion, fair comment privilege, first amendment, no harm, the Nevada

minute order excoriating GTII management etc) and despite being fully apprised and on notice that the

absolute litigation applied, the named parties still filing a frivolous lawsuit knowing there was no basis to

proceed is troubling and improper at best. **That has to be taken in context with the threats at**

**Hofman's home. Harassing and frivolous**.

As to all of the other purported publications (NO 6 was never published and is not even defamatory

and would still be protected by the litigation privilege), they are all absolutely  privileged and not

objectionable.

## CONCLUSION

This is clearly an action filed for a improper purpose, threatening physical violence, which was also

frivolous. In light of that, movant requests that the NOTION TO DISMISS be granted in total.

Dated:

RICHARD HOFMAN PRO SE

## WORD COUNT

A word count was undertaken. Word Perfect states that the word count is 7801.

RICHARD HOFMAN

<u>Declaration of Richard Hofman re Meet and Confer</u>

1. The following facts are of my own personal knowledge and true and correct.

2. Along with Plaintiffs counsel, Mr. Hedtke and I participated in a meet and confer with regard to my potential response to the First amended Complaint. I discussed many of the reasons I thought there case was defective and asked that the action be dismissed. I have subsequently asked it to be dismissed.

Dated: 9-5-24. I declare under penalty of perjury that the above is true ad correct to the best of my knowledge.   Executed this 5th day of September 2024 at Agoura Hills, Ca BY

RICHARD HOFMAN PRO SE