

1

2  RICHARD HOFMAN ESQ. SBN 110692
   29219 CANWOOD ST, NO 101,
3  AGOURA HILLS, CA 91301
   Tel:    (818) 203-6777
4  EMAIL: Hofman.R@gmail.com

5  FOR Defendant

6

7                    UNTIED STATES DISTRICT COURT

8              FOR THE CENTRAL DISTRICT OF CALIFORNIA

9

10

11  GLOBAL TECH INDUSTRIES GROUP    Case No.  2;24-CV-05615-HDV-MAAx
    ET AL
12                                  **Request for Judicial Notice Part 3  re**
           Plaintiffs,             **Motion TO DISMISS**
13
              V.
14
    RICHARD A. HOFMAN ET AL
15  .
                                    Date:  -10-24--2024
16         Defendants.             Time:    10AM
                                     CTRM: HON JUDGE VERA
17                                  CR 5B 5TH FL

18

19

20

21

22

23

24  TO THE HONERABLE COURT & TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

25  Plaintiff submits this request that the Court take Judicial Notice of Publicly filed Legal documents filed

26  with Public Courts.:

27

28

1

## ATTACHED HERETO AND REQUEST FOR JUDICIAL NOTICE

2          4.       7-22-24 Nevada Motion for a Receiver etc

3

4

5

6

7

8

9

10    Dated:

11                                              RICHARD HOFMAN IN PRO SE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ELECTRONICALLY SERVED
7/22/2024 9:21 AM

Electronically Filed
07/22/2024 9:19 AM

*[signature]*
CLERK OF THE COURT

**Marquis Aurbach**
Chad F. Clement, Esq.
Nevada Bar No. 12192
Alexander K. Calaway, Esq.
Nevada Bar No. 15188
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
clement@maclaw.com
acalaway@maclaw.com
*Attorneys for Plaintiffs*

# DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| WHITE ROCKS (BVI) HOLDINGS INC., et al. | Case No.: A-24-896359-B |
| Plaintiffs, | Dept. No.: 16 |
| vs. | |
| DAVID REICHMAN, KATHY M. GRIFFIN, FRANK BENINTENDO, DONALD GILBERT, DOES I THROUGH X, INCLUSIVE, and ROE CORPORATIONS I THROUGH X, inclusive, | **PLAINTIFFS' EX PARTE MOTION TO APPOINT RECEIVER AND ISSUE A TEMPORARY RESTRAINING ORDER ON AN ORDER SHORTENING TIME** |
| Defendants, | **HEARING REQUESTED** |
| GLOBAL TECH INDUSTRIES GROUP INC., | |
| Nominal Defendant. | |

Plaintiffs, by and through their counsel of record, Marquis Aurbach Chtd., hereby submit this *ex parte* motion to appoint a receiver and issue a temporary restraining order on an order shortening time (the "Motion"). This Motion is made and based on the following memorandum of points and authorities, the appendix of exhibits on file herein, any pleadings and papers on file herein, and any oral argument this Court may allow at the time of hearing.

/ / /

/ / /

/ / /

/ / /

**MARQUIS AURBACH**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:17683-002 5522345_3

Dated this 18th day of July 2024.

MARQUIS AURBACH

By ___/s/ Alexander K. Calaway_____
Chad F. Clement, Esq.
Nevada Bar No. 12192
Alexander K. Calaway, Esq.
Nevada Bar No. 15188
10001 Park Run Drive
Las Vegas, Nevada 89145
*Attorneys for Plaintiffs*

### ORDER SHORTENING TIME

Upon the declaration of Alexander K. Calaway, Esq., and good cause appearing therefore,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the time for hearing of the above-entitled matter will be shortened and will be heard on the 7th day of August, 2024, at the hour of 9:30 a.m. ~~a.m.~~ in Department 16 of the Eighth Judicial District Court, located at the Regional Justice Center, 200 Lewis Avenue, Las Vegas, Nevada 89155.
Counsel may appear and attend via ZOOM videoconferencing:
Meeting ID: 826 1725 8054
Passcode: 843469

Dated this 22nd day of July, 2024

_____
DISTRICT COURT JUDGE
**F6D 996 FBC8 D949**
**Timothy C. Williams**
**District Court Judge**

LAB

Submitted by:

MARQUIS AURBACH

By */s/ Alexander K. Calaway*___
Chad F. Clement, Esq.
Nevada Bar No. 12192
Alexander K. Calaway, Esq.
Nevada Bar No. 15188
10001 Park Run Drive
Las Vegas, Nevada 89145
*Attorneys for Plaintiffs*

MAC:17683-002 5522345_3

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## DECLARATION OF ALEXANDER K. CALAWAY, ESQ. IN SUPPORT OF ORDER SHORTENING TIME

Alexander K. Calaway, Esq. declares as follows:

1.     I am an attorney with the law firm of Marquis Aurbach Chtd. and counsel for Plaintiffs in the above-stated action. I am duly licensed to practice law in the State of Nevada and have personal knowledge of and I am competent to testify concerning the facts herein.

2.     This Motion is made on an Order Shortening Time ("OST") because nominal defendant Global Tech Industries Inc. ("GTII") is currently delinquent with its filings with the U.S. Securities and Exchange Commission ("SEC") and the OTC Markets Group market exchange ("OTC").[1]

3.     GTII's delinquent filings are required under Section 13(a) or 15(d) of the Securities Exchange Act of 1934 ("Exchange Act"), and GTII's current management, defendants David Reichman, Kathy M. Griffin, Frank Benintendo, Donald Gilbert (collectively "Management") has failed, and I am informed that Management has failed and otherwise refused to make these required disclosures. Thus, Management has put GTII at immediate, imminent risk of being delisted and potential regulatory action.

4.     Plaintiffs are informed, and thereon believe, that once Management receives notice that Plaintiffs are seeking this appointment of a receiver, they will immediately transfer or encumber assets of GTII, cause GTII to issue additional shares of GTII stock to themselves or to entities they control and sell the GTII shares they have already wrongfully issued themselves – thereby further diluting the interests of Plaintiffs and GTII's other shareholders.

5.     Plaintiffs are informed, and thereon believe, that Management has failed to disclose accurate and material information to the public and shareholders regarding GTII's director/officer compensation, director independence, beneficial stock ownership, and related-party transactions. Management's failure to disclose accurate information has subjected GTII to further liability under the Exchange Act.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

---

[1] OTC (formerly known as Pink Sheets) is a financial market in the United States, which provides price and liquidity information for over the counter (i.e. OTC) securities.

MAC:17683-002 5522345_3

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

6.      Plaintiffs are informed, and thereon believe, that Management has been looting GTII by transferring GTII asset and shares to themselves, all while withholding this material information from its stockholders and the public. Plaintiffs are informed, and thereon believe, that should Management continue to transfer, sell, or issue new GTII shares to themselves, or to entities they control, GTII's stockholders, including those who have acquired shares in the public market, will have their interests further diluted.

7.      On the other hand, the harm – if any – suffered by GTII in being restrained temporarily from issuing and selling shares of stock, paying executive bonuses, or disposing of assets (other than in the regular course of business) pending the appointment and installation of a receiver will be negligible, measurable, and subject to remedy at law.

8.      Finally, the OTC has issued a warning on GTII's public profile that GTII will be delisted if its disclosures are not made.[2] Plaintiffs have sent multiple demands to Management, warning them of their failures, but Management has failed and otherwise refused to take corrective action on behalf of GTII. I have also personally notified Management's counsel of this action and motion to appoint receiver on order shortening time.

9.      In sum, Management has put GTII at immediate, imminent risk of being delisted by the OTC and potential regulatory action by the SEC. To avoid imminent, irreparable harm to GTII and Plaintiffs, I respectfully request that the Court hear this Motion on an Order Shortening Time and enter an *ex parte* order: (a) appointing Plaintiffs' receiver to take control of GTII, to take immediate, corrective action with respect to GTII's delinquent filings; and (b) temporarily restraining Management as further set forth herein.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[2] https://www.otcmarkets.com/stock/GTII/overview

MAC:17683-002 5522345_3

1      I declare under penalty of perjury under the laws of the State of Nevada that the foregoing

2  is true and correct.

3      Dated this 18th day of July 2024.

4                        */s/Alexander Calaway*

5                        Alexander K. Calaway, Esq.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

    Plaintiffs move this Court to appoint a receiver to take immediate possession and control of GTII. Management has engaged in fraud and collusion; illegal activity under the Exchange Act; caused GTII to be delinquent in its required filings; and is currently misleading investors and stockholders. Simply put, Management has put GTII at immediate, imminent risk of being delisted and potential regulatory action. Accordingly, pursuant to NRS 78.650 and NRS 30.010, Plaintiffs request that a receiver be appointed to take immediate take control of GTII, and to mitigate any further damage caused to GTII and its stockholders. Specifically, Plaintiffs respectfully request Paul Strickland ("Strickland") be appointed as receiver, who has already assembled a team of auditors, securities counsel, and other professionals to assist him with taking immediate corrective action with respect to GTII's delinquent filings.

    Plaintiffs further move this Court for a temporary restraining order ("TRO") enjoining GTII including its subsidiaries and affiliates, from: (1) issuing or selling any additional shares of stock (common or preferred); (2) incurring any additional debt (outside of the ordinary course of business); (3) disposing of any business assets (outside of the ordinary course of business); (4) making any loans to any officer or director of GTII or any person or entity owned or controlled by any such officer or director; (5) closing, liquidating, transferring or withdrawing funds from (other than in the ordinary course of business) any bank or brokerage account; (6) paying any further bonuses to any officer or director of GTII; and (7) undertaking any other act or transaction that is not in the ordinary course of business.

MAC:17683-002 5522345_3

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    This Motion is being made on the grounds that GTII's Management has caused GTII to

2    become delinquent in its Exchange Act reporting, mismanaged GTII's assets, committed

3    malfeasance, engaged in fraud, transferred GTII shares to themselves, and omitted material

4    financial and factual information in its public disclosures to stockholders and investors. This

5    Motion for injunctive relief and appointment of a receiver are based upon NRCP 65, NRS 78.650,

6    NRS 32.010, the appendix of exhibits previously filed herein (hereinafter cited as "APPX"), and

7    the arguments of counsel at the time of hearing.

8    **II.    FACTUAL BACKGROUND**

9    **A.    GTII AND ITS CURRENT MANAGEMENT.**

10    GTII is a Nevada Corporation that is publicly traded on the OTC market exchange under

11    the symbol "GTII."[3] As of June 11, 2024, the number of GTII common stock shares outstanding

12    is 334,112,569 shares.[4] Accordingly, Plaintiffs are the holders of about 55,731,408 shares of GTII

13    common stock, representing about 17% of GTII's issued and outstanding shares.[5]

14    As a public traded company, GTII is required to meet reporting standards under Section

15    13(a) or 15(d) of the Exchange Act.[6] Specifically, the SEC and OTC require companies like GTII

16    to periodically disclose financial statements.[7] Companies like GTII are required to file, among

17    other things, periodic financial reports, and disclosures, such as Form 10-K and Form 10-Q reports,

18    with the SEC.[8] The purpose of this reporting is to keep shareholders and markets informed, and to

19    allow investors to make informed decisions.[9] The accuracy of GTII's financial disclosures must

20    be certified by GTII's Chief Executive Officer and Chief Financial Officer, Mr. Reichman. GTII's

---

[3] **Ex. 15** (APPX 000377-385) (hereinafter cited as "Hofman Decl.") at ¶3.

[4] *Id.* at ¶3; **Ex. 1** (APPX 000001-9); *see also* **Ex. 2** (APPX 000010-13).

[5] *Id.* at ¶4; **Ex. 3** (APPX 000014-221).

[6] *Id.* at ¶5; **Ex. 4** (APPX 000222-225); **Ex. 5** (APPX 000226-228).

[7] *Id.*

[8] *Id.*

[9] *Id.*

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:17683-002 5522345_3

1    financials must also be audited by an independent public accounting firm registered with the Public

2    Company Accounting Oversight Board ("PCAOB").[10]

3    According to GTII's most recent Form 10-K filing, GTII's current Management team

4    includes: David Riechman ("Reichman"), who is the Chairman of the Board, Chief Executive

5    Officer, Chief Financial Officer, Principal Executive Officer, Principal Financial and Accounting

6    Officer, a Director, member of the Executive Committee; Kathy Griffin ("Griffin), who is the

7    President, Director, member of the Executive Committee, and member of the Compensation

8    Committee; Frank Benintendo ("Benintendo"), who is the secretary of GTII, a Director, member

9    of the Executive Committee, and member of the Compensation Committee; and Donald Gilbert

10    ("Gilbert"), who is a Director and member of the Executive Committee, Compensation Committee,

11    and Audit Committee.[11]

12    **B.    MANAGEMENT'S DELINQUENT SEC REPORTING.**

13    In April 2023, the OTC found disclosures filed by Management to contain "***recurring***

14    ***inaccuracies or concealment in disclosures related to insider transactions and beneficial***

15    ***ownership***."[12] Management's reporting failures caused GTII's stock to be down listed from the

16    "OTCQB" market to the lowest possible market, "Pink Limited Information."[13]

17    On March 31, 2024, Management failed to file their Form 10-Q for the quarter ending

18    March 31, 2024 (the "Delinquent Disclosure").[14] Management subsequently filed SEC Form 12b-

19

20    [10] *Id.*

21    [11] **Ex. 6 (**APPX 000229-319) (hereinafter the "Form 10-K"),

22    [12] **Ex. 7** (APPX 000320-324) (Emphasis added).

23    [13] **Ex. 6,** at pg. 5. The OTC has three (3) risk levels: "OTCQX" (good), "OTCQB" (fair), and "Pink" (bad).
     Hofman Decl. at ¶12. Securities traded on the "OTCQX" are highly sought after by investors, because

24    companies on this market must meet high financial standards, follow best practice corporate governance,
     demonstrate compliance with U.S. securities laws. *Id.* Similarly, securities traded on the "OTCQB" market

25    are fairly sought after by investors, because companies on this market are current in their reporting and
     undergo an annual verification and management certification process. *Id.* Securities traded on the lowest

26    tier, the "Pink" market, are the least sought after by investors, because the companies on this market have
     shown non-compliance with U.S. securities laws. *Id.*

27

28    [14] Hofman Decl. at ¶13; **Ex. 8** (APPX 000325-329)

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:17683-002 5522345_3

25, also known as the Notification of Late Filing, wherein they represented that the company is "working to file its Quarterly Report on Form 10-Q on or before the fifth calendar day extension provided by Rule 12b-25."[15] This provided the Company with an additional five (5) additional calendar days (i.e., May 20, 2024) to file the Delinquent Disclosure.[16]

*To date, however, **Management has still failed to file the Form 10-Q as required by the SEC and OTC**.*[17] ***Accordingly, the OTC issued the following yield sign and "Delinquent SEC Reporting" warning on the Company's public profile***:[18]



In sum, Management has put GTII in immediate, imminent danger of being delisted by the OTC, or worse, potential regulatory action by the SEC.[19] As such, a receiver must be immediately appointed to take corrective action on behalf of the Company.[20]

### C.    MANAGEMENT'S ONGOING FRAUD AND CONCEALMENT.

Management has grossly mismanaged the Company by filing materially false, misleading, and incomplete SEC disclosures, as well as intentionally omitting material information from its

---

[15] *Id.*

[16] *Id.*

[17] Hofman Decl. at ¶14.

[18] *Id.*

[19] *Id.* at ¶15.

[20] *Id.*

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:17683-002 5522345_3

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    SEC disclosures.[21] At the outset, to facilitate their fraud, Management utilized a sham auditor, BF

2    Borgers CPA PC and its sole audit partner, Benjamin F. Borgers CPA, to serve as the Company's

3    PCAOB auditor (hereinafter the "Auditor").[22]

4    In May 2024, the SEC charged the Auditor with "***fabricating audit documentation***" and

5    falsely stating that its "audits complied with PCAOB standards."[23] According to the SEC, the

6    Company's Auditor is a "***sham audit mill***" that has put "investors and markets at risk[.]"[24] The

7    Auditor facilitated Management's false representations and material omissions in GTII's Form 10-

8    K pertaining to director/officer compensation, director independence, beneficial stock ownership,

9    and related-party transactions.[25]

10   First, Management has falsely represented their own compensation and stock ownership.[26]

11   In the Form 10-K, Management falsely represented that they "have not been paid bonuses" and

12   that they have not received any "stock option awards[.]"[27] In reality, Management has received

13   more than a total of more than ***$66 million dollars in compensation during the same period***.[28]

14   Similarly, Management falsely represented that there was no common stock beneficially owned

15   by GTII's directors and officers in 2022 and 2023.[29] Conversely, ***Management held more than***

16   ***95,850,648 shares of common stock in 2022 and received more than 65,750,901 shares of***

17   ***common stock in 2023***.[30]

18   

---

19   [21] Hofman Decl. at ¶16; *see also* **Ex. 6.**

20   [22] **Ex. 9** (APPX 000330-335); **Ex. 10** (APPX 000336-338).

21   [23] **Ex. 10** (Emphasis added).

22   [24] *Id.* (Emphasis added).

23   [25] **Ex. 6**. at pg. 13.

24   [26] *Id.* at pg. at pg. 44.

25   [27] *Id.*

26   [28] *Id.* at pg. 15.

27   [29] *Id.* at pg. 45.

28   [30] **Ex. 11** (APPX 000339-343).

MAC:17683-002 5522345_3

Second, in the Form 10-K, Management falsely represented that GTII has "*two independent directors*" as defined in the Nasdaq listing standards.[31] Conversely, GTII has *no independent directors,* let alone independent directors that remotely meet the Nasdaq listing standards.

Third, in the Form 10-K, Management falsely represented, among other things, that "No executive officer, director or any member of these individuals' immediate families or any corporation or organization with whom any of these individuals is an affiliate is or has been indebted to us since the beginning of our last fiscal year." *Conversely, Management authorized and approved several undisclosed transactions wherein Management, as well as their family members, friends, affiliates, and other related parties, personally benefited.*

For example, some of Management's undisclosed transactions include, without limitation: 850,000 shares issued to Mr. Riechman's *personal masseuse*; 5,251,683 shares issued to Justine Riechman, Mr. Reichman's *daughter*; 6,001,386 shares issued to Dot 8 Inc., an entity owned by Reichman's daughter; 3,025,000 shares issued personally to Gabriele Falanga, Mr. Reichman's *girlfriend in Beverly Hills*; 550,000 shares issued personally to Anthony Matassa, Mr. Reichman's *Bentley mechanic*; 2,101,550 shares issued to SF Irrevocable Trust, one of Mr. Reichman's *family trusts*; 2,282,850 shares issued to Anne Frances Trust, another one of Reichman's *family trusts*; and 21,185,503 shares issued to Hans and Rosy Epstein Memorial Committee Inc. and Epstein Memorial Charity, yet another one of Mr. Reichman's *family trusts*.[32]

As another example, in or around May 2022, Management authorized and approved a transaction with Internet Capital Online, Inc. ("ICO"), an entity owned and/or controlled by the Company's counsel, Warren R. Markowitz, Esq. ("Markowitz").[33] In this transaction, the

---

[31] **Ex. 6**, at pg. 46.

[32] Hofman Decl. at ¶22; **Ex. 12** (APPX 000344-352).

[33] **Ex. 13** (APPX 000353-357). Mr. Markowitz of "The Markowitz Law Firm" is listed as the Company's Securities Counsel on GTII's OTC Market profile. *Id.* While "The Markowitz Law Firm" maintains a business address at 7260 W Azure Dr Suite 140-1200, Las Vegas, NV 89130, Mr. Markowitz is not licensed to practice law in Nevada.

MAC:17683-002 5522345_3

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1   Company transferred 10,000,000 shares to ICO without any consideration, ICO then sold the

2   Company's shares for $2,000,000 cash, and ***Mr. Markowitz and Mr. Reichman pocketed the cash***

3   (hereinafter the "ICO Transaction").[34]

4        As yet another example, in or around October and November 2022, Management

5   authorized and approved two "settlement" transactions between the Company, M. Bruk ("Bruk"),

6   and R. Kirzhner ("Kirzhner") (collectively "BK").[35] In both transactions, the Company paid cash

7   to BK, ***charitable contribution[s]" were made to Mr. Reichman's family trusts*** by BK, and the

8   Company received nothing in return (hereinafter the "BK Transactions").[36]

9        In sum, Management's fraudulent disclosures have put GTII in immediate, imminent

10  danger of being delisted by the OTC, or worse, potential regulatory action by the SEC.[37]

11  Accordingly, appointment of a receiver and issuance of a temporary restraining order is

12  necessary.[38]

### D.    MANAGEMENT'S SELF-DEALING, CONVERSION, AND WASTE.

14       Management has grossly mismanaged the Company by personally enriching themselves at

15  the expense of GTII and its stockholders, converting Company assets, and issuing shares to benefit

16  themselves, family members, friends, affiliates, and other related parties.[39]

17       First, under current Management, GTII has experienced significant operational deficits.[40]

18  In 2022, GTII reported a ***net operating loss of $13.1 million dollars***.[41] In 2023, GTII experienced

---

[34] Hofman Decl. at ¶23.

[35] **Ex. 6**.

[36] *Id.*

[37] Hofman Decl. at ¶25.

[38] *Id.*

[39] *Id.* at ¶26.

[40] **Ex. 6** at pg. 15.

[41] *Id.*

MAC:17683-002 5522345_3

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

a *net loss of approximately $83 million dollars*.[42] According to its last financial disclosure, *GTII was insolvent* as its total liabilities of $8.3 million dollars, far exceeded its total assets of about $1.2 million dollars.[43] What is worse, according to its last two (2) years of financials, GTII has generated *$0 dollars in revenue*.[44] Notwithstanding these abysmal financials, Management paid themselves a staggering *$12.6 million dollars in 2022 and $54.6 million dollars in 2023*.[45]

According to GTII's disclosures, Management's business goal has been to increase shareholder value through the acquisition of companies with significant growth opportunities.[46] In reality, however, *Management's goal has been to personally enrich themselves and related parties at the expense of GTII and its stockholders*.[47]

Second, Management has failed to account for approximately $4.3 million dollars of Company funds in 2023.[48] The Company obtained approximately $3.2 million in proceeds from the sale of warrants, and its cash position for 2022 was $3,320,164 dollars.[49] But by the end of 2023, the Company's cash reserves had plummeted to $1,238,564 dollars.[50] Management reports to have used all of this cash in Company operations, but they also report no revenue, no ongoing operations, and no completed acquisitions in 2023.[51] *In other words, Management has spent approximately $4.3 million dollars in Company funds with nothing to show for it*.[52]

---

[42] *Id.*

[43] *Id.* at pg. at 14.

[44] *Id.*

[45] *Id.*

[46] *Id.* at pg. 3-4.

[47] Hofman Decl. at ¶28.

[48] *Id.* at ¶29.

[49] **Ex. 6** at pg. 16.

[50] *Id.*

[51] *Id.*

[52] *Id.*

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:17683-002 5522345_3

Third, rather than use Company funds to benefit the Company, its stockholders, or pursue the Company's stated business goals, Management has diverted the funds to benefit themselves, family members, friends, affiliates, and other related parties.[53] Indeed, on just January 25, 2023, Management authorized the issuance of approximately 65,750,901 common shares valued at $98,626,351 (collectively the "January 2023 Issuances").[54] And as noted above, Management approved and authorized millions of issuances to Mr. Reichman's personal masseuse, his daughter, his family trusts, his girlfriend in Beverly Hills, and his Bentley mechanic.[55] As previously explained, Management also negotiated and approved the ICO Transaction and Bruk/Kirzhner Transactions.[56]

As another example, on or about June 11, 2024, Management announced their cancellation of 36,460,714 shares that had previously been issued as part of the January 2023 Issuances (the "Cancelled Shares").[57] Management admitted in the same announcement that the January 2023 Issuances had been "***erroneously and inadvertently***" issued.[58] Amazingly, however, these Cancelled Shares only comprised approximately half of the January 2023 Issuances, did not account for all of the shares wrongfully issued to Management's family members, friends, trusts, and other related parties, and did not account for the cash diverted by Management.[59] In other words, Management's recent share cancellation was nothing more than a *post hoc* attempt to cover up their ongoing mismanagement, fraud, self-dealing, conversion, and waste.[60]

---

[53] Hofman Decl. at ¶30.

[54] **Ex. 6**, at pgs. 27-29.

[55] Hofman Decl. at ¶30.

[56] *Id.*

[57] **Ex. 1**.

[58] *Id.* (Emphasis added).

[59] *Id. c.f.*, **Ex. 6** at pgs. 27-29.

[60] *Id. see also* Hofman Decl. at ¶31.

MAC:17683-002 5522345_3

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

In sum, Management's present and far-reaching self-dealing, conversion, and waste of GTII's assets has been put GTII and its business in immediate, imminent danger.[61] Stockholders have made several demands on Management to take corrective action with respect to their self-dealing, conversion, and waste, but Management has refused to comply with such demands.[62]

### E.   APPOINTMENT OF A RECEIVER AND THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER IS NECESSARY.

Pursuant to NRS 78.650, a receiver is necessary to take control of GTII and mitigate any further damage to GTII by its current Management team.[63] As detailed herein, Management has been engaged in blatant fraud, collusion, and gross mismanagement in the conduct or control of GTII.[64] Management's illegal activity under the Exchange Act, delinquent SEC disclosures, and reoccurring failures in reporting have put the assets of GTII are in danger of waste, sacrifice, and loss through delisting, or worse, regulatory action by the SEC.[65] Accordingly, Plaintiffs respectfully requests this Court appoint a receiver to take immediate possession and control of GTII.[66]

Plaintiffs request that Mr. Strickland be appointed as receiver of GTII, who is prepared to take immediate corrective action with respect to GTII's delinquent filings.[67] As set forth in his declaration, Mr. Strickland is highly qualified, competent, prepared, and equipped to serve as receiver of GTII.[68] Mr. Strickland has two decades of international business experience within the finance, entertainment, private equity, agriculture, mining, manufacturing, and technology

---

[61] Hofman Decl. at ¶32.

[62] **Ex. 14** (APPX 000358-376).

[63] Hofman Decl. at ¶8.

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *See* **Ex. 16** (APPX 000386-389) (hereinafter cited as "Strickland Decl.").

[68] *Id.* at ¶¶6-20.

MAC:17683-002 5522345_3

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

sectors.[69] Since 2013, Mr. Strickland has served as a board member of public and private companies in North America and Asia.[70] Mr. Strickland also serves as an officer and sits on the board of several OTC publicly traded companies across a wide variety of sectors, focusing on restructuring activities and corporate governance issues.[71] In leading these companies, Mr. Strickland has successfully recovered over $14 million dollars in creditor assets and brought these companies back into compliance with SEC reporting requirements.[72] At the Plaintiffs' request, Mr. Strickland has already assembled a team of auditors and securities counsel to assist him with taking immediate corrective action with respect to GTII's delinquent filings.[73]

Finally, Plaintiffs believe that GTII's Management will continue to buy and sell shares with knowledge of the information they have not disclosed to the public, which will further dilute Plaintiffs' shares, exacerbate Management's market manipulation, and further GTII's liability under the Exchange Act.[74] Therefore, Plaintiffs respectfully request an order immediately restraining and enjoining GTII and its Management from: (a) issuing or selling any additional shares of stock (common or preferred); (b) incurring any additional debt (outside of the ordinary course of business); (c) disposing of any business assets (outside of the ordinary course of business); (d) making loans to any officer or director of GTII or any person or entity owned or controlled by Management; (e) closing liquidating, transferring, or withdrawing funds from (other than in the ordinary course of business) any bank or brokerage account; (f) paying any bonus to officer or director of GTII; and (g) undertaking any other act or transaction that is not in the ordinary course of business.[75]

---

[69] *Id.* at ¶7.

[70] *Id.* at ¶8.

[71] *Id.* at ¶¶8-20.

[72] *Id.*

[73] *Id.* at ¶6.

[74] Hofman Decl. at ¶10.

[75] *Id.*

MAC:17683-002 5522345_3

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

III.  **LEGAL ARGUMENT**

    A.  **IMMEDIATE APPOINTMENT OF A RECEIVER IS NECESSARY TO TAKE CORRECTIVE ACTION WITH RESPECT TO GTII'S DELINQUENT DISCLOSURES.**

Nevada law provides for multiple mechanisms for the appointment of a receiver by a district court. NRS 78.650 provides that anyone holding ten percent (10%) of the outstanding shares of a corporation can apply to the court for a receiver, including circumstances where the directors have been guilty of fraud or where the corporation's assets are in danger of waste or lost, among other similar circumstances. Additionally, NRS 32.010(5) provides that a receiver may be appointed "when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights." Finally, the Nevada legislature has provided for the appointment of a receiver in any case where "receivers have heretofore been appointed by the usages of the courts of equity." NRS 32.010(6).[76]

When it appears that irreparable injury will result, the appointment of a receiver is appropriate, even without notice to necessary or interested parties. *Maynard v. Railey*, 2 Nev. 313 (1866). While the appointment of a receiver is generally "a harsh and extreme remedy" (*Hines v. Plante*, 99 Nev. 259, 261, 661 P.2d 880, 881 (1983)), "the appointment of a receiver is an action within the trial court's sound discretion and will not be disturbed absent a clear abuse." *Medical Device Alliance, Inc. v. Ahr,* 116 Nev. 851, 862, 8 P.3d 135, 142 (2000) *(*quoting *Nishon's Inc. v. Kendigian,* 91 Nev. 504, 505, 538 P.2d 580, 581 (1975)); *see also Peri–Gil Corp. v. Sutton,* 84 Nev. 406, 411, 442 P.2d 35, 37 (1968); *Bowler v. Leonard,* 70 Nev. 370, 383, 269 P.2d 833, 839

---

[76] As this Court is well aware, a receiver is generally appointed to take possession of property and preserve its value where it appears to the court that there is a dispute as to who should hold it. *Lynn v. Ignalls*, 100 Nev. 115, 120 (1984). A receiver is, in effect, a neutral party who preserves the value of the asset within his or her possession for the benefit of whoever is subsequently determined to be entitled to it. *Id.* Again, under NRS § 32.010(6) this Court has the authority to appoint a receiver "where receivers have heretofore been appointed by the usages of the courts of equity." An early Nevada Supreme Court case explained that a court sitting in equity may appoint a receiver where the plaintiff is not afforded a full and adequate remedy at law. *Ex Rel. Nenzel v. District Court,* 49 Nev. 145, 160 (Nev. 1925) (citations omitted). This includes circumstances where there is corporate mismanagement, neglect, incapacity, and other wrongs by corporate officers. *Id.*

MAC:17683-002 5522345_3

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

(1954). Here, a receiver for GTII is necessary under NRS 78.650, NRS 32.010(5), and NRS 32.010(6).

### 1.    Plaintiffs have standing to seek appointment of a receiver.

First, as stated above, NRS 78.650 provides that anyone owning ten percent (10%) of the outstanding shares of a corporation can apply to the Court for a receiver. Here, Plaintiffs are the holders of owner of at least 55,731,408 shares of GTII common stock, representing at least **17%** of GTII's issued and outstanding shares.[77] Thus, Plaintiffs unquestionably have standing to seek a receiver under NRS 78.650(1).

In addition, Plaintiffs are also entitled to a receiver to protect GTII's assets. Nevada courts have long recognized that a receiver is generally appointed to take possession of property and preserve its value where it appears to the court that neither party should hold it. *Lynn*, 100 Nev. at 120, 676 P.2d at 800–01; *see also Anes v. Crown P'ship, Inc.*, 113 Nev. 195, 199, 932 P.2d 1067, 1069 (1997).

In this case, Plaintiffs also has standing as stockholders of GTII to protect its assets from Management's delinquent disclosures;[78] fraud;[79] and ongoing self-dealing, conversion, and waste.[80] Indeed, Management has put GTII in immediate, imminent danger of being delisted by the OTC, or worse, potential regulatory action by the SEC.[81]  And Management has grossly mismanaged the Company by personally enriching themselves at the expense of GTII and its stockholders, converting Company assets, and issuing shares to benefit themselves, family members, friends, affiliates, and other related parties.[82]

---

[77] **Ex. 1; Ex. 2; Ex. 3**; Hofman Decl. at ¶4.

[78] Hofman Decl. at ¶¶11-15.

[79] *Id.* at ¶¶16-25.

[80] **Ex. 6**; Hofman Decl. at ¶¶26-31.

[81] **Ex. 4; Ex. 5; Ex. 8**; Hofman Decl. at ¶15.

[82] **Ex. 6; Ex. 7; Ex. 9; Ex. 11, Ex. 12**; Hofman Decl. at ¶¶22-24, 28.

MAC:17683-002 5522345_3

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  Further, Management's failure to make required Exchange Act disclosures, and their

2  "recurring inaccuracies or concealment in disclosures" only further exacerbate this imminent risk

3  of GTII being delisted or being subject to regulatory action by the SEC.[83]  Notably, the loss of

4  value and tradability of GTII's stock jeopardizes GTII's financial ability to engage in acquisitions

5  and continue as a going concern (i.e., meet its obligations). Plaintiffs' interests as stockholders are

6  directly tied to the value and tradability of GTII's shares, which Management has continued to

7  dilute and de-value. Thus, the only viable option at this point is to appoint a receiver to take control,

8  protect GTII from its Management, and take immediate, corrective action with respect to GTII's

9  delinquent SEC disclosures.[84]

**2.  Appointment of a receiver is appropriate in light of Management's
gross mismanagement, fraud, collusion, waste, and illegal conduct.**

11  Second, appointment of a receiver is appropriate in light of Management's misconduct.

12  NRS 78.650(1) permits the Court to appoint a receiver for a corporation when:

(b) Its trustees or directors have been guilty of fraud or collusion or gross
mismanagement in the conduct or control of its affairs. . . [or]

(c) The assets of the corporation are in danger of waste, sacrifice or loss through
attachment, foreclosure, litigation or otherwise. . .

16  The Nevada Supreme Court held that where a stockholder has alleged sufficient circumstances

17  listed in NRS 78.650, (any one of which authorizes the Court to appoint a receiver), that was

18  sufficient to justify the appointment of receiver. *Transcontinental Oil Co. of Nev. v. Free*, 80 Nev.

19  207, 210-11, 391 P.2d 317, 319 (1964); *Medical Device Alliance, Inc. v. Ahr*, 116 Nev. 851, 862-

20  63, 8 P.3d 135, 142 (2000) abrogated on other grounds by *Costello v. Casler*, 127 Nev., Adv. Op.

21  36, 254 P.3d 631, 634 n. 4 (2011).

22  Here, Plaintiffs have established sufficient facts supporting appointment a receiver under

23  NRS 78.650(1), subsections (b) and (c). Specifically, Plaintiffs have established, among other

24  things, that Management:

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

---

[83] **Ex. 7.**

[84] Strickland Decl. at ¶¶3-6.

MAC:17683-002 5522345_3

- Has grossly mismanaged the Company by (a) failing to file required disclosures, (b) causing the Company to be delinquent with the OTC and SEC, and (c) violating securities laws and regulations.[85]

- Has grossly mismanaged the Company by (a) filing materially false, misleading, and incomplete disclosures; and (b) intentionally omitting material information from its disclosures.[86]

- Has grossly mismanaged the Company by (a) personally enriching themselves at the expense of GTII and its stockholders, (b) converting Company assets, and (c) issuing shares to benefit themselves, family members, friends, affiliates, and other related parties.[87]

- Has put GTII in immediate, imminent danger of being delisted by the OTC, or worse, potential regulatory action by the SEC.[88]

These facts have only been buttressed by the OTC's finding that Management has engaged in a continued pattern of fraudulent behavior and material omissions to the public.[89] Even after stockholders made specific demands to take corrective action, Management has refused to file its delinquent SEC disclosures, and refused to return or cancel the $98 million dollars of stock they stole in 2023.[90] Management has been repeatedly warned by Plaintiffs, but Management has *still* failed to comply with disclosure requirements, address its false financials, and continues to ignore their fraudulent self-dealing and related party transaction. Management instead has continued to engage in continued insider transactions with information not yet available or known to the public and shareholders.

    In a word, it is beyond dispute that GTII's assets, as well as the stockholders' interest in GTII, are in danger of being irretrievably lost through the fraud, collusion, and malfeasance of Management. Accordingly, appointment of a receiver is necessary in this case.

---

[85] Hofman Decl. at ¶¶11-15.

[86] *Id.* at ¶¶16-25.

[87] *Id.* at ¶¶26-31.

[88] *Id.* at ¶15.

[89] **Ex. 7**.

[90] **Ex. 14**.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:17683-002 5522345_3

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

### 3.    Management is disqualified from serving as receiver.

Finally, Management's conduct has disqualified themselves from serving as receiver. Under NRS 78.650(4), directors or trustees who have not been guilty of negligence or an active breach of duty are preferred as an appointed receiver. Unfortunately for GTII and its stockholders, it is not one member of the Management team, but the entire Management team who has been guilty of fraud, collusion, and malfeasance.[91] Management's continued pattern of fraudulent behavior and material omissions to the public have shown to constitute a systemic pattern infecting the entire Management team.[92] As such, any member of the current Management team must be precluded from serving as the appointed receiver under NRS 78.650(4).

For the same reasons, and in light of the fraudulent financials, disclosures, and omissions by the current Management team, a receiver with public reporting experience will be necessary to remedy GTII's financial disclosures.[93] The appointed receiver will need to consult with outside professionals, including securities counsel, to avoid further damage to GTII and its stockholders under federal and state securities laws.

10.    Here, the only Management member that is arguably qualified to remedy the financial deficiencies is GTII's CFO, Mr. Reichman. However, Mr. Reichman is perhaps the most flagrant perpetrator of the ongoing fraud. Indeed, Mr. Reichman has been engaged in rampant self-dealing and related party transactions benefit Mr. Reichman personally and his family.[94] And as noted above, millions of shares of stock have been issued Mr. Reichman's personal masseuse, his daughter, his family trusts, his girlfriend in Beverly Hills, and his Bentley mechanic.[95] These do not even include Mr. Reichman's self-dealing and conversion in the ICO Transaction and

---

[91] *See* **Ex 7**; *see also* **Ex. 6**.

[92] *Id.*

[93] *Id.*

[94] Hofman Decl. at ¶¶26-31.

[95] *Id.*; *see also* **Ex. 6** at pgs. 27-29.

MAC:17683-002 5522345_3

1  Bruk/Kirzhner Transactions.[96] Tellingly, Management has even Management admitted that their

2  stock issuances were made "erroneously[.]"[97]

3    Moreover, it is Mr. Riechman that either directed or facilitated Management's decision to

4  make false representations and omit material information from GTII's disclosures.[98] This is

5  because accuracy of GTII's financial disclosures must be certified by GTII's Chief Executive

6  Officer and Chief Financial Officer, Mr. Reichman.[99] The only check on this was GTII's sham

7  Auditor, hired by Management, who the SEC has since charged with fraud.[100] Therefore, allowing

8  a member of the GTII Management team to control GTII as a receiver would simply defeat the

9  purpose of having a receiver and exacerbate the threatened irreparable harm to GTII. Accordingly,

10  the members of Management cannot be appointed by this Court to serve as the receiver.

## B.    A TEMPORARY RESTRAINING ORDER SHOULD BE ISSUED TO PROTECT GTII FROM MANAGEMENT DURING THE TRANSITION.

12    NRCP 65(b)(1)(a) permits the Court to issue a temporary restraining order ("TRO") if the

13  facts show "immediate and irreparable injury, loss, or damage will result to the movant before the

14  adverse party can be heard in opposition." *Hamm v. Arrowcreek Homeowners Assoc.*, 124 Nev.

15  Adv. Op. 28, 5 11.15,183 P.3d 895, 901 n. 15 (2008) (quoting *Dixon v. Thatcher*, 103 Nev. 414,

16  415-16, 742 P.2d 1029, 1029-30 (1987)). NRCP(b)(1)(b) also requires the movant's attorney to

17  "certify in writing any efforts made to give notice and the reasons why it should not be required."

18  An injunction may be issued "to preserve the status quo" if the party seeking the injunction enjoys

19  a reasonable likelihood of success on the merits, and that the party will be subjected to irreparable

20  harm if the injunction is not issued. *Pickett v. Comanche Construction, Inc.*, 108 Nev. 422, 426,

21  836 P.2d 42, 44 (1992) (citing *Dixon*, 103 Nev. at 415-16, 742 P.2d at 1029-30.

---

[96] *Id.* at ¶¶23-24.

[97] *Id.* at ¶31; *see also* **Ex. 1**.

[98] *See* **Ex. 6**.

[99] *Id.*

[100] **Ex. 10**.

MAC:17683-002 5522345_3

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    Indeed, a TRO may be granted when a party is at risk of its assets being disposed of by the

2    other party before the case can be resolved by the court. For example, in a dispute over the sale of

3    a business, the purchaser of a business "sought a temporary restraining order prohibiting [the seller]

4    from selling the repossessed business to a third party." *Herup v. First Bos. Fin., LLC*, 123 Nev.

5    228, 230, n. 1, 162 P.3d 870, 871, n. 1 (2007). Moreover, the Nevada Supreme Court has held a

6    shareholder may appropriately request injunctive relief to restrain the corporation from taking

7    some action that would result in "great or irreparable injury to the corporation." *Sherman v. Clark*,

8    4 Nev. 138, 143 (1868).

9    Here, given the facts at hand, it is appropriate for the Court to issue a temporary restraining

10   order to protect Plaintiffs, GTII, its shareholders while the receiver takes control over GTII.

        **1.**    **Plaintiffs, GTII, its other shareholders will suffer immediate, severe
and irreparable harm unless GTII and its Management are enjoined
from further issuances, transfers, and further fraudulent disclosures
and omissions.**

13   First, Plaintiffs, GTII, and its shareholders, including those who purchased interests in the

14   public market, will suffer immediate, severe and irreparable harm unless the temporary restraining

15   order is issued to prevent further transfers of GTII shares, prevent further injury to GTII's assets,

16   and to prevent further fraudulent disclosures and material omissions by GTII's Management team.

17   Failure to issue the injunction will allow Management the opportunity to continue transferring

18   shares to themselves, further jeopardize GTII's assets through the self-dealing and conversion and

19   cause even more injury to GTII. Moreover, failure to issue the injunction will allow Management

20   the opportunity to sell the tens of millions of shares of GTII stock they have issued to themselves

21   or to related entities based, thereby further diluting the interests of Plaintiffs and the other GTII

22   shareholders, including those who have acquired shares in the public market.

23   Under Nevada law "acts committed without just cause which unreasonably interfere with

24   a business or destroy its credits or profits, may do an irreparable injury and thus authorize issuance

25   of an injunction." *Sobel v. Capital Management Consultants, Inc.*, 102 Nev. 444, 446, 726 P.2d

26   335, 337 (1986) (quoting *Guion v. Terra Marketing of Nevada, Inc.*, 90 Nev. 237, 240, 523 P.2d

27   847, 848 (1974)). Here, Management has already caused GTII to be delinquent with the SEC,

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:17683-002 5522345_3

thereby jeopardizing its listing with the OTC and subjecting it to potential regulatory action.[101]

What is worse, instead of disclosing the material facts or associated with their related party

transactions and self-dealing, Management has been selling GTII shares into the market, with

advantage of the truth.[102] This has (and will continue) to unavoidably cause damage to GTII's

existing shareholders and will cause irreparable harm to GTII's shareholders and prospective

investors who fatefully decide to invest in GTII by purchasing shares in the open market.

In addition, the Nevada Supreme Court has held a shareholder may appropriately request

injunctive relief to restrain the corporation from taking some action that would result in "great or

irreparable injury" to the corporation. *Sherman,* 4 Nev. at 143; *Hettel v. First Judicial District

Court*, 30 Nev. 382, 388-89, 96 P. 1062, 1063 (1908) (explaining that equitable relief may be

appropriate to protect the interests of the corporation pending a hearing).

Here, injunctive relief is necessary to prevent Management from continuing to issue and

sell shares of GTII stock to themselves at the expense and injury to GTII's existing shareholders.

Once GTII has notice that Plaintiffs are moving to appointment a receiver, Management, on behalf

of GTII, will immediately transfer more GTII shares to themselves, further encumber assets of

GTII, immediately cause GTII to issue additional shares of GTII to themselves or to entities they

control—thereby further diluting the interests of Plaintiffs and GTII's existing shareholders.  It is

therefore necessary for the Court to issue a temporary restraining order to protect GTII and its

shareholders while the receiver takes control.

**2.    Plaintiffs will likely prevail on their claims against Management.**

Second, given the facts at hand, it is likely that Plaintiffs will prevail on their claims,

including for the appointment of a receiver. As further discussed above, NRS 78.650(1) permits

the Court to appoint a receiver for a corporation in situations such as these. Also, as set forth above,

Plaintiffs have alleged facts supporting the need to appoint a receiver under NRS 78.650(1),

---

[101] Hofman Decl. at ¶15.

[102] *See* **Ex. 6**.

MAC:17683-002 5522345_3

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

subsections (b) and (c). Specifically, Plaintiffs have established, among other things, that Management:

- Has grossly mismanaged the Company by (a) failing to file required disclosures, (b) causing the Company to be delinquent with the OTC and SEC, and (c) violating securities laws and regulations.[103]

- Has grossly mismanaged the Company by (a) filing materially false, misleading, and incomplete disclosures; and (b) intentionally omitting material information from its disclosures.[104]

- Has grossly mismanaged the Company by (a) personally enriching themselves at the expense of GTII and its stockholders, (b) converting Company assets, and (c) issuing shares to benefit themselves, family members, friends, affiliates, and other related parties.[105]

- Has put GTII in immediate, imminent danger of being delisted by the OTC, or worse, potential regulatory action by the SEC.[106]

And these facts have only been buttressed by the OTC's finding that Management has engaged in a continued pattern of fraudulent behavior and material omissions to the public.[107] In a word, it is beyond dispute that appointment of a receiver is appropriate in this case.

Further, the need for the appointment of a receiver is made even more urgent by Management's recent failure to remedy its delinquent and fraudulent disclosures, failure file a Form 10-Qs regarding current financial position, and Management's transfers of GTII shares to themselves. This will have the immediate effect of continued harm to existing holders of outstanding shares as well as investors that could be buying GTII shares right now. Accordingly, it is highly likely that Plaintiffs will prevail on their claims against Management, including their claim for the appointment of a receiver, and a temporary restraining order should be issued to protect GTII's assets and stockholders during that transitional period.

---

[103] Hofman Decl. at ¶¶11-15.

[104] *Id.* at ¶¶16-25.

[105] *Id.* at ¶¶26-31.

[106] *Id.* at ¶15.

[107] **Ex. 7.**

MAC:17683-002 5522345_3

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

### 3. The balance of hardships favors Plaintiffs.

Third, another factor considered in determining the propriety of injunctive relief is balance of the hardships. In this case, the balance of the hardships heavily favors Plaintiffs. Management has already caused GTII to issue fraudulent financial disclosures, omit material information to the public and shareholders, and caused net operating losses exceeding $96 million dollars over the last two years.[108] Management's actions have endangered GTII's ability to continue to raise capital on capital markets, caused it to violate federal laws, and caused it to suffer serious financial losses.[109] Thus, any further transfers or disclosures by GTII pertaining to GTII's assets will result in immediate and irreparable harm to GTII, its shareholders, and uninformed investors.

Moreover, if Management continues to issue GTII shares to themselves, Plaintiffs and GTII's shareholders, including those who have acquired shares in the public market, will have their interests further diluted.[110] The fact that Management is more concerned in transferring and selling their own shares than disclosing the truth in their financials to the public is telling.[111] On the other hand, the harm – if any – suffered by Management in being restrained temporarily from issuing new shares of stock, selling their existing stock, paying executive bonuses or disposing of assets (other than in the regular course of business) pending the appointment of a receiver will be negligible, measurable and subject to remedy at law.

### 4. A TRO should be issued to preserve the *status quo* until a receiver is in place.

Fourth, injunctive relief is appropriate to preserve the *status quo* pending an adjudication of a claim. *Number One Rent-A-Car v. Ramada Inns. Inc.*, 94 Nev. 779, 780-81, 587 P.2d 1329, 1330 (1978). Here, the *status quo* can be maintained only by issuing a temporary restraining order enjoining Management from issuing any new shares of stock, selling their existing stock, and

---

[108] **Ex. 6** at pg. 15.

[109] **Ex. 7, Ex. 8, Ex. 9, Ex. 10.**

[110] Hofman Decl. at ¶9.

[111] **Ex. 1.**

MAC:17683-002 5522345_3

1   disposing of any assets (other than in the regular course of business) while this Court's receiver

2   can take control and take corrective action with respect to the financial reporting.

### 5. The security for the temporary restraining order should be *de minimus.*

4   Finally, NRCP 65(c) gives the Court has great discretion in setting the amount of the

5   security required for a temporary restraining order. As discussed above, Plaintiffs are likely to

6   succeed with their request for the appointment of a receiver. If this Court issues the temporary

7   restraining order, but thereafter ultimately determines that the appointment of a receiver is not

8   warranted and dissolves the injunction, GTII will suffer no injury other than costs and attorneys'

9   fees incurred in appearing in this action. Plaintiffs therefore request that the Court set the bond

10  amount at Five Thousand Dollars ($5,000).

### C. THIS IS AN APPROPRIATE CASE FOR APPOINTING A RECEIVER AND ISSUING A TEMPORARY RESTRAINING ORDER *EX PARTE.*

13  The Supreme Court of Nevada has held that *ex parte* motions for equitable relief are

14  permissible in emergency situations. *Dangberg Holdings Nevada. LLC v. Douglas County*, 115

15  Nev. 129, 146, 978 P,2d 311, 322 (1999); *see also Robinson v. Ocwen Loan Servicing, LLC*, No.

16  2:10-CV-321 JCM, 2010 WL 2834895, at *2 (D. Nev. July 16, 2010). NRCP 65(b)(1) expressly

17  contemplates the issuance of a temporary restraining order without notice if: (A) it clearly appears

18  that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse

19  party or that party's attorney can be heard in opposition, and (B) the applicant's attorney certifies

20  to the court in writing the reasons notice should not be required. *Dangberg*, 115 Nev. at 146, 978

21  P.2d at 322.

22  Here, the Declaration of Alexander K. Calaway, Esq. set forth above provides the reasons

23  for the Motion being brought *ex parte*:

24      GTII's delinquent filings are required under Section 13(a) or 15(d) of the Securities
        Exchange Act of 1934 ("Exchange Act"), and GTII's current management,
25      defendants David Reichman, Kathy M. Griffin, Frank Benintendo, Donald Gilbert
        (collectively "Management"), and I am informed that Management has failed and
26      otherwise refused to make these required disclosures. Thus, Management has put
        GTII at immediate, imminent risk of being delisted and potential regulatory action.

27      . . .

28

MAC:17683-002 5522345_3

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1       In the last 48 hours, the OTC has issued a final warning on GTII's public profile that GTII will be delisted if its disclosures are not made. Plaintiffs have sent

2  multiple demands to Management, warning them of their failures, but Management has failed and otherwise refused to take corrective action on behalf of GTII. I have

3  also personally made efforts to give Management notice of and of this action and the instant motion by directly emailing their securities counsel, Warren Markowitz,

4  Esq.[112]

5  Mr. Calaway's declaration also sets forth counsel's efforts to give GTII and its counsel notice

6  under NRCP 65(b)(1)(B). Thus, it is appropriate to immediately appoint a receiver and issue a

7  TRO *ex parte* to protect the assets and stock of GTII under NRCP 65(b).

8      **D.    MR. STRICKLAND SHOULD BE APPOINTED AS RECEIVER AND CHARGED WITH TAKING IMMEDIATE CORRECTIVE ACTION**

9      **WITH RESPECT TO GTII'S DELINQUENT FILINGS.**

10      Finally, Plaintiffs request that Mr. Strickland be appointed as receiver of GTII, who is

11  prepared to take immediate corrective action with respect to GTII's delinquent filings. As set forth

12  in his declaration, Mr. Strickland is highly qualified, competent, prepared, and equipped to serve

13  as receiver of GTII.[113] Mr. Strickland has two decades of international business experience within

14  the finance, entertainment, private equity, agriculture, mining, manufacturing, and technology

15  sectors.[114] Since 2013, Mr. Strickland has served as a board member of public and private

16  companies in North America and Asia.[115] Mr. Strickland also serves as an officer and sits on the

17  board of several OTC publicly traded companies across a wide variety of sectors, focusing on

18  restructuring activities and corporate governance issues.[116] In leading these companies, Mr.

19  Strickland has successfully recovered over $14 million dollars in creditor assets and brought these

20  companies back into compliance with SEC reporting requirements.[117] At the Plaintiffs' request,

21

22

23  [112] Calaway Decl. at ¶¶3,8.

24  [113] Strickland Decl. at ¶¶6-20.

25  [114] *Id.* at ¶7.

26  [115] *Id.* at ¶8.

27  [116] *Id.* at ¶¶8-20.

28  [117] *Id.*

**MARQUIS AURBACH**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:17683-002 5522345_3

1    Mr. Strickland has already assembled a team of auditors and securities counsel to assist him with

2    taking immediate corrective action with respect to GTII's delinquent filings.[118]

3    **IV.    <u>CONCLUSION</u>**

4         For the above-stated reasons, Plaintiffs request the Court enter an *ex parte* order: (a)

5    appointing Plaintiffs' receiver to take control of GTII, to take immediate, corrective action with

6    respect to GTII's delinquent filings; and (b) temporarily restraining Management as further set

7    forth herein.

8         Dated this 18th day of July 2024.

9

10                                           MARQUIS AURBACH

11

12                              By      */s/ Alexander K. Calaway*
                                        Chad F. Clement, Esq.
13                                      Nevada Bar No. 12192
                                        Alexander K. Calaway, Esq.
14                                      Nevada Bar No. 15188
                                        10001 Park Run Drive
15                                      Las Vegas, Nevada 89145
                                        *Attorneys for Plaintiffs*

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

---

[118] *Id.* at ¶6.

MAC:17683-002 5522345_3

**CSERV**

DISTRICT COURT
CLARK COUNTY, NEVADA

| | |
|---|---|
| White Rocks (BVI) Holdings Inc., Plaintiff(s)<br><br>vs.<br><br>David Reichman, Defendant(s) | CASE NO: A-24-896359-B<br><br>DEPT. NO.  Department 16 |

## <u>AUTOMATED CERTIFICATE OF SERVICE</u>

This automated certificate of service was generated by the Eighth Judicial District Court. The foregoing Order Shortening Time was served via the court's electronic eFile system to all recipients registered for e-Service on the above entitled case as listed below:

Service Date: 7/22/2024

| | |
|---|---|
| Robert Rabbat | rrabbat@epgrlawyers.com |
| Chad Clement | cclement@maclaw.com |
| Cally Hatfield | chatfield@maclaw.com |
| Alexander Calaway | acalaway@maclaw.com |
| Lennie Fraga | lfraga@maclaw.com |
| Teri Pham | tpham@epgrlawyers.com |