```
RICHARD HOFMAN ESQ. SBN 110692
29219 CANWOOD ST, NO 101,
AGOURA HILLS, CA 91301
Tel:    (818) 203-6777
EMAIL: Hofman.R@gmail.com

FOR Defendant
```

UNTIED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL TECH INDUSTRIES GROUP ET AL <br><br> Plaintiffs, <br><br> V. <br><br> RICHARD A. HOFMAN ET AL <br> . <br><br> Defendants. | Case No.  2;24-CV-05615-HDV-MAAx <br><br> **Request for Judicial Notice Part 4 re Motion to Dismiss** <br><br> CONTINUED <br><br> Date: -10-24--2024 <br> Time:    10AM <br>  CTRM: HON JUDGE VERA <br> CR: 5B |

TO THE HONERABLE COURT & TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Plaintiff submits this request that the Court take Judicial Notice of Publicly filed SEC documents filed with  Public disclosure..:

REQUEST FOR JUDICIAL NOTICE PART 1

**ATTACHED HERETO AND REQUEST FOR JUDICIAL NOTICE**

1. 10K FOR YEAR ENDING 12-31-2023 With relevant selections.

2. April 10, 2024 dated 8-K signed May 2.

3. 5-3-2024 8-K signed May 10,

4. July 2 2024 8K relevant portions.

Dated: 4/0/21

_____
RICHARD HOFMAN IN PRO SE

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# FORM 8-K

**CURRENT REPORT**
Pursuant to Section 13 or 15(d) of The Securities Exchange Act of 1934

Date of Report (Date of earliest event reported): July 2, 2024

# Global Tech Industries Group, Inc.
(Exact name of registrant as specified in its charter)

| Nevada | 000-10210 | [90-1604380] |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

**511 Sixth Avenue, Suite 800**
**New York, NY 10011**
(Address of Principal Executive Offices) (Zip Code)

**(212) 204-7926**
(Registrant's telephone number, including area code)

**N/A**
(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13(c)(c))

Securities registered pursuant to Section 12(b) of the Act: None.

Securities registered pursuant to Section 12(g) of the Act:

| Title of each Class | Trading Symbol | Name of each exchange on which registered |
|---|---|---|
| Common Stock | GTII | N/A |

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933 (§230.405 of this chapter) or Rule 12b-2 of the Securities Exchange Act of 1934 (§240.12b-2 of this chapter).

Emerging growth company ☐

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

23

**Item 1.01**	**Entry into a Material Definitive Agreement.**

The information set forth in Item 5.02 below is incorporated herein by reference.

**Item 3.02**	**Unregistered Sales of Equity Securities.**

The information set forth in Item 5.02 below is incorporated herein by reference.

**Item 5.02.**	**Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers.**

On April 7, 2024, Global Tech Industries Group, Inc. (the "Company") created the new executive position of Chief Operating Officer, and appointed Afshin Luke Rahbari to serve in that position effective as of May 1, 2024 (the "Effective Date").

On July 2, 2024, the Company executed an at-will employment agreement (the "Agreement") with Mr. Rahbari, which further memorialized his future appointment by the board of directors to Chief Executive Officer anticipated to occur on August 1, 2024, subject to the terms and conditions of the Agreement.

The Company had originally retained the services of Mr. Rahbari as a management consultant effective December 1, 2023 to assist the Company's board of directors in refocusing its short and long-term corporate goals, including a retirement and succession plan for its senior management.

*Mr. Rahbari's Bio*

Mr. Rahbari began his capital markets career in 1993 as a derivatives trader and equity options specialist on the Chicago Board Options Exchange (CBOE). In 2002, Mr. Rahbari was part of the management team involved in the sale of the firm to TD Bank. Mr. Rahbari then ran derivatives books in New York, London, and Chicago for TD bank. In 2007, Mr. Rahbari became the Chief Investment Officer for Peachtree Asset Management, establishing a London based Structured Settlement asset management for Peachtree Settlement Funding, which was one of the largest originators of Structured Settlements in the world. After the sale of Peachtree, Mr. Rahbari moved to Chicago and, along with his partners, established Equity Armor Investments ("EAI") in 2011, a U.S. Securities and Exchange Commission registered RIA specializing in derivative and volatility strategies. From 2016 until present, Mr. Rahbari serves as Chief Executive Officer of EAI. Mr. Rahbari also has extensive experience in the trading and capital markets and has been active in several private, non-public firms as well. Mr. Rahbari has an MBA from the University of Chicago.

In connection with the appointments summarized above, there is no arrangement or understanding between Mr. Rahbari and any other persons pursuant to which Mr. Rahbari was appointed to his positions. There are no family relationships between Mr. Rahbari and any of the Company's officers or directors. Other than as described below, there are no other transactions to which the Company or any of its subsidiaries is a party in which Mr. Rahbari has a material interest subject to disclosure under Item 404(a) of Regulation S-K.

*Mr. Rahbari's Employment Agreement Summary*

In connection with Mr. Rahbari's appointment as the Company's Chief Operating Officer, as of May 1, 2024, and Chief Executive Officer, as of August 1, 2024, the Company entered into an at-will Employment Agreement (the "Employment Agreement") with Mr. Rahbari (the "Term"). Mr. Rahbari's compensation is equity based such that Mr. Rahbari is eligible to receive in tranches up to an aggregate of twenty-four million (24,000,000) shares of the Company's Common Stock, par value $0.001 per share ("Common Stock"), through the fiscal year ending December 31, 2026. In addition, Mr. Rahbari may receive a discretionary performance-based bonus of ten million (10,000,000) shares of Common Stock upon the occurrence of certain performance goals and conditions as set forth in the Employment Agreement.

24

9/1/24, 3:43 PM
Case 2:24-cv-05615-HDV-MAA    Document 25    Filed 09/06/24    Page 6 of 20    Page ID #:200
sec.gov/Archives/edgar/data/356590/000149315224026664/form8-k.htm

**Item 9.01**    **Financial Statements and Exhibits.**

(d) Exhibits.

| Exhibit No. | Description |
|---|---|
| 10.1* | Employment Agreement between Global Tech Industries Group, Inc. and Mr. Afshin Luke Rahbari. |
| 104* | Cover Page Interactive Data File (embedded within the Inline XBRL document). |

* Filed herewith.

25

## SIGNATURES

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

**Global Tech Industries Group, Inc.**

Date: July 9, 2024

By:  */s/ David Reichman*
Name: David Reichman
Title:  Chairman & CEO



9/1/24, 3:45 PM
sec.gov/Archives/edgar/data/356590/000149315224026664/ex10-1.htm
Case 2:24-cv-05615-HDV-MAA    Document 25    Filed 09/06/24    Page 8 of 20    Page ID #:202

EX-10.1 2 ex10-1.htm

Exhibit 10.1

**Global Tech Industries Group, Inc.**
511 Sixth Avenue, Suite 800
New York, NY 10011

July 2, 2024

Afshin Luke Rahbari
luke@gtii-us.com

Re:    **Offer of Employment with Global Tech Industries Group, Inc.**

Dear Luke,

On behalf of Global Tech Industries Group, Inc., a Nevada corporation (the "Company"), I am pleased to invite you to join the Company as COO, Chief Operating Officer. In this role, you will report directly to the Chief Executive Officer and the Board of Directors (the "Board") of the Company and (i) make all operating decisions regarding the Company; and (ii) be responsible for all hirings and placement of service contracts for operations. The effective date of your employment will be April 1, 2024 (the "Effective Date").

The terms of this offer of employment are as follows:

**1. Role & Compensation.**

**A. Office; Additional Titles; Other Agreements.** (i) Your principal place of business will be in New York, New York, though you may be permitted to work remotely unless otherwise required by the Company, and you may be required to travel to other offices as the Company shall maintain, from time to time as required to perform your services hereunder or as reasonably required by the Company, at the Company's expense (air travel and accommodations) and in accordance with the generally applicable policies and procedures of the Company, if such are established at such time, or if such have not been established, subject to presentation of reasonably detailed expense statements or vouchers and such other information as the Company may reasonably require.

(i) Future Appointment as CEO. Shall become CEO on August 1st, 2024 subject to your appointment by the Board, and that initiatives below are underway:

(a) *The GTII Dividend.* You shall take all necessary steps with respect to the distribution of a dividend, issued on or about April 29, 2023, and that the Company's shareholders are made aware of the distribution through press, social media, etc., that the Company's shareholders have also been made aware that they should communicate directly with retail brokers and clearing houses to claim their dividend shares; and that the retail brokers are put on notice, that the Company will be part of this effort.

(b) *Negotiation with Affinity.* You shall personally lead negotiations with Affinity to facilitate and create a new joint venture asset management company,

(c) *AEGIS Capital* And other investment banks: You shall: investigate the options available to form a client relationship with AEGIS Capital; and access their capital markets platform to complete due diligence; and (iii) procure co-investment in new deals for the Company.

27

(d) *MadOldNutProduction*. Continue to work with MONP to form either an investment partnership or a joint venture regarding ABT's transformational technology.

**B**. **Bonus**. (i) You shall earn a one-time fiscal year bonus (the "Performance Bonus") of ten million (10,000,000) shares of the Company's restricted Common Stock, par value $0.001 per share ("Common Stock") upon the occurrence of the following events: the price per share of Common Stock is at or above the $2.00 dollar mark for a period of over three consecutive (3) calendar months; and the Company has met all standards required for the completion of the Company's listing on a national exchange (collectively, the "Performance Goals").

(i) Performance Goals: Depending on the achievement of the Performance Goals in any whole or partial fiscal year, the award of any additional Performance Bonus shall be subject to the approval by the Board in their sole and absolute discretion. This performance Bonus is separate from and in addition to point B in the contract.

**C. Equity Grant.** (i) Subject to approval by the Board, the Company shall grant to you (i) eight million (8,000,000) shares of Common Stock for the fiscal year ending in 2024 (the "2024 Issuance"), upon the signing of this agreement. (ii) four million (4,000,000) shares of Common Stock to be issued on January 1st, 2025, and four million (4,000,000) shares of Common Stock to be issued on July 1, 2025 (the "2025 Issuances"), and (iii) four million (4,000,000) shares of Common Stock to be issued on January 1st, 2026, and four million (4,000,000) shares of Common Stock to be issued on July 1, 2026, (the "2026 Issuances").

(i) Tax Withholding. The Company may withhold from any amounts payable hereunder, including any amounts payable pursuant to this Section 1, any applicable federal, state, and local taxes that the Company is required to withhold pursuant to any applicable laws.

**D. GTII Equity in Equity Armor Investments**. The Company shall explore the purchase of ten percent (10%) equity in the employee-owned firm, Equity Armor Investments ("EAI") (the "EAI Interest"), of which you are the sole principal, for a mutually agreed upon number of shares of Common Stock. This will include the following:

(a) the Company shall have the right of first refusal to purchase additional shares in EAI

(b) tag along rights, such that the Company may sell a portion of the EAI Interest along with members of EAI in equal percentage.

**2. Benefits.**

**A. Benefit Plans.** During the term of your employment, you shall be afforded the opportunity to participate in any Company employee benefit plans (i.e., medical, dental, vacation) covering employees at your level, as such may be in effect from time to time as determined by the Board. As of the execution of this Agreement, no such benefit plans have been implemented by the Board. The Company reserves the right to change such benefits on a Company-wide basis as necessary from time to time.

**B**. **Business Expenses**. In accordance with the Company's policies established from time to time, the Company will pay or reimburse you for all reasonable and necessary out-of-pocket expenses incurred by you in the performance of your duties under this Agreement, subject to the presentment of supporting documentation, limited to normal "Expense Limitations" as defined by the IRS. Expenditures other than "reasonable and necessary" will be subject to board approval. "Out of Pocket Expenses" shall be defined as any expense less than $500.00. Any expenses that exceed the Out-of-Pocket Expenses limitations must be expressly approved by the Board.

-2-



9/1/24, 3:45 PM
Case 2:24-cv-05615-HDV-MAA    Document 25    Filed 09/06/24    Page 10 of 20    Page ID
sec.gov/Archives/edgar/data/356590/000149315224026664/ex10-1.htm
#:204

Each party shall pay the fees and expenses of its advisers, counsel, accountants, and other experts, if any, and all other expenses incurred by such party incident to the negotiation, preparation, execution, delivery, and performance of this offer letter. This offer letter is binding on and personal to you and you may not assign or delegate this letter without the prior written consent of the Company.

If any ambiguity or question of interpretation or of construction arises in connection with or relating to this offer letter, each of the parties agrees that this offer letter is to be interpreted and construed as if jointly drafted by both the parties and that no presumption or burden of proof is to arise favoring or disfavoring the Company or you by virtue of the authorship of any provision of this offer letter. All share numbers contained in this offer letter are subject to proportionate adjustment for stock splits, stock combinations and other similar recapitalizations applicable to you.

This offer letter contains the entire agreement of the parties relating to the subject matter hereof and supersedes all prior agreements and understanding with respect to such subject matter, and the parties hereto have made no agreements, representations, or warranties relating to the subject matter of this letter agreement which are not set forth herein.

This offer letter may be executed in multiple counterparts, each of which constitutes an original and all of which together constitute the same instrument. A manually executed counterpart of this letter delivered by means of e-mail as a Portable Document Format file (".pdf") (or in any present or future file format intended to preserve the original graphic and pictorial appearance of a document), or by means of facsimile transmission, constitutes the valid and effective execution and delivery of this letter for all purposes and has the same force and effect for all purposes as the personal delivery of a manually executed counterpart bearing an original ink signature.

[*Signature page follows*]

-5-

29

## GLOBAL TECH INDUSTRIES GROUP, INC.

### INDEMNIFICATION AGREEMENT

This Indemnification Agreement ("Agreement") is made as of July 02, 2024 by and between Global Tech Industries Group, Inc., a Nevada corporation (the "Company"), and Luke Rahbari ("Indemnitee"), an individual who is an officer of the Company.

### RECITALS

A. The Company desires to attract and retain the services of highly qualified individuals, such as Indemnitee, to serve as officers of the Company and to indemnify its officers to provide them with the maximum protection permitted by law.

B. The Company and Indemnitee recognize the significant risks incurred by the officers of the Company in serving in such capacities.

***NOW, THEREFORE***, in consideration for Indemnitee's services as an officer or director of the Company, the Company and Indemnitee hereby agree as follows:

1. **Indemnification**.

(a) *Third Party Proceedings*. The Company shall indemnify Indemnitee if Indemnitee is or was a party or is threatened to be made a party to any threatened, pending or completed action, suit, proceeding or any alternative dispute resolution mechanism, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Company) by reason of the fact that Indemnitee is or was a director, officer, employee or agent of the Company, or any subsidiary of the Company, or by reason of the fact that Indemnitee is or was serving at the request of the Company as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement (if such settlement is approved in advance by the Company, which approval shall not be unreasonably withheld) actually and reasonably incurred by Indemnitee in connection with such action, suit or proceeding if Indemnitee acted in good faith and in a manner Indemnitee reasonably believed to be in or not opposed to the best interests of the Company, and, with respect to any criminal action or proceeding, had no reasonable cause to believe Indemnitee's conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that Indemnitee did not act in good faith and in a manner which Indemnitee reasonably believed to be in or not opposed to the best interests of the Company, and, with respect to any criminal action or proceeding, had reasonable cause to believe that Indemnitee's conduct was unlawful.

1

30

(b) *Proceedings By or in the Right of the Company*. The Company shall indemnify Indemnitee if Indemnitee was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Company or any subsidiary of the Company to procure a judgment in its favor by reason of the fact that Indemnitee is or was a director, officer, employee or agent of the Company, or any subsidiary of the Company, or by reason of the fact that Indemnitee is or was serving at the request of the Company as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees) and, to the fullest extent permitted by law, amounts paid in settlement actually and reasonably incurred by Indemnitee in connection with the defense or settlement of such action or suit if Indemnitee acted in good faith and in a manner Indemnitee reasonably believed to be in or not opposed to the best interests of the Company, except that no indemnification shall be made in respect of any claim, issue or matter as to which Indemnitee shall have been adjudged to be liable to the Company unless and only to the extent that the proper court of the State of Nevada or the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, Indemnitee is fairly and reasonably entitled to indemnity for such expenses which the proper court of the State of Nevada or such other court shall deem proper.

(c) *Mandatory Payment of Expenses*. To the extent that Indemnitee has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in Subsections (a) and (b) of this Section 1, or in defense of any claim, issue or matter therein, Indemnitee shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by Indemnitee in connection with such action, suit, or proceeding.

2. **Advancement of Expenses**. All reasonable expenses incurred by or on behalf of Indemnitee (including costs of enforcement of this Agreement) shall be advanced from time to time by the Company to Indemnitee within thirty (30) days after the receipt by the Company of a written request for an advance of expenses, whether prior to or after final disposition of a proceeding (except to the extent that there has been a final adverse determination that Indemnitee is not entitled to be indemnified for such expenses), including without limitation any proceeding brought by or in the right of the Company. The written request for an advancement of any and all expenses under this paragraph shall contain reasonable detail of the expenses incurred by Indemnitee. By execution of this Agreement, Indemnitee shall be deemed to have made whatever undertaking as may be required by law at the time of any advancement of expenses with respect to repayment to the Company of such expenses. In the event that the Company shall breach its obligation to advance expenses under this Section 2, the parties hereto agree that Indemnitee's remedies available at law would not be adequate and that Indemnitee would be entitled to specific performance.

3. **Presumptions and Effect of Certain Proceedings**. Upon making a request for indemnification, Indemnitee shall be presumed to be entitled to indemnification under this Agreement and the Company shall have the burden of proof to overcome that presumption in reaching any contrary determination. The termination of any proceeding by judgment, order, settlement, arbitration award or conviction, or upon a plea of nolo contendere or its equivalent shall not affect this presumption or, except as determined by a judgment or other final adjudication adverse to Indemnitee, establish a presumption with regard to any factual matter relevant to determining Indemnitee's rights to indemnification. If the person or persons so empowered to make a determination pursuant to Section 4 hereof shall have failed to make the requested determination within sixty (60) days after any judgment, order, settlement, dismissal, arbitration award, conviction, acceptance of a plea of nolo contendere or its equivalent, or other disposition or partial disposition of any proceeding or any other event that could enable the Company to determine Indemnitee's entitlement to indemnification, the requisite determination that Indemnitee is entitled to indemnification shall be deemed to have been made.

2

31

### 4. **Procedure for Determination of Entitlement to Indemnification**.

(a) *Notice/Cooperation by Indemnitee*. Indemnitee shall, as a condition precedent to his right to be indemnified under this Agreement, give the Company notice in writing as soon as practicable of any claim made against Indemnitee for which indemnification will or could be sought under this Agreement. Notice to the Company shall be directed to the Chief Executive Officer or President of the Company at the address shown on the signature page of this Agreement (or such other address as the Company shall designate in writing to Indemnitee). Notice shall be deemed received three business days after the date postmarked if sent by domestic certified or registered mail, properly addressed, or five business days if sent by airmail to a country outside of North America. Otherwise, notice shall be deemed received when such notice shall actually be received by the Company. In addition, Indemnitee shall give the Company such information, documentation and cooperation as it may reasonably require and as shall be within Indemnitee's power.

(b) *Procedure*. Any indemnification and advances provided for in Section 1 and Section 2 of this Agreement shall be made no later than thirty (30) days after receipt of the written request of Indemnitee; provided, in the case of any request for indemnification, the Company has determined that Indemnitee is entitled to indemnification hereunder. If a claim under this Agreement, under any statute, or under any provision of the Company's Certificate of Incorporation or Bylaws providing for indemnification, is not paid in full by the Company within thirty (30) days after a written request for payment thereof has first been received by the Company, Indemnitee may, but need not, at any time thereafter bring an action against the Company to recover the unpaid amount of the claim and, subject to Section 14 of this Agreement, Indemnitee shall also be entitled to be paid for the expenses (including attorneys' fees) of bringing such action. It shall be a defense to any such action (other than an action brought to enforce a claim for expenses incurred in connection with any action, suit or proceeding in advance of its final disposition) that Indemnitee has not met the standards of conduct which make it permissible under applicable law for the Company to indemnify Indemnitee for the amount claimed. Nevertheless, Indemnitee shall be entitled to receive interim payments of expenses pursuant to Section 2 of this Agreement unless and until such defense may be finally adjudicated by court order or judgment from which no further right of appeal exists. It is the parties' intention that if the Company contests Indemnitee's right to indemnification, the question of Indemnitee's right to indemnification shall be for the court to decide, and neither the failure of the Company (including its Board of Directors, any committee or subgroup of the Board of Directors, independent legal counsel, or its stockholders) to have made a determination that indemnification of Indemnitee is proper in the circumstances because Indemnitee has met the applicable standard of conduct required by applicable law, nor an actual determination by the Company (including its Board of Directors, any committee or subgroup of the Board of Directors, independent legal counsel, or its stockholders) that Indemnitee has not met such applicable standard of conduct, shall create a presumption that Indemnitee has or has not met the applicable standard of conduct.

3

9/1/24, 3:46 PM	Case 2:24-cv-05615-HDV-MAA    Document 25    Filed 09/06/24    Page 14 of 20   Page ID
sec.gov/Archives/edgar/data/356590/000149315224026664/ex10-1.htm
#:208

(c) *Change in Control*. The Company agrees that if there is a Change in Control of the Company then with respect to all matters thereafter arising concerning the rights of Indemnitee to indemnity payments and expense advances under this Agreement or any other agreement, the Bylaws or Certificate of Incorporation now or hereafter in effect, the Company shall seek legal advice only from special independent counsel selected by the Company and approved by Indemnitee (which approval shall not be unreasonably withheld or delayed). Such special independent counsel, among other things, shall, within ninety (90) days of its retention, render its written opinion to the Company and Indemnitee as to whether and to what extent Indemnitee would be permitted to be indemnified under applicable law. The Company agrees to pay the reasonable fees of the special independent counsel and to fully indemnify such counsel against any and all expenses (including attorneys' fees), claims, liabilities, and damages arising out of or relating to this Agreement or its engagement pursuant hereto.

(d) *Notice to Insurers*. If, at the time of the receipt of a notice of a claim pursuant to Section 4(a) hereof, the Company has director and officer liability insurance in effect, the Company shall give prompt notice of the commencement of such proceeding to the insurers in accordance with the procedures set forth in the respective policies. The Company shall thereafter take all necessary or desirable action to cause such insurers to pay, on behalf of the Indemnitee, all amounts payable as a result of such proceeding in accordance with the terms of such policies.

(e) *Selection of Counsel*. In the event the Company shall be obligated under Section 2 hereof to pay the expenses of any proceeding against Indemnitee, the Company, if appropriate, shall be entitled to assume the defense of such proceeding, with counsel approved by Indemnitee, which approval shall not be unreasonably withheld, upon the delivery to Indemnitee of written notice of its election to do so. After delivery of such notice, approval of such counsel by Indemnitee and the retention of such counsel by the Company, the Company will not be liable to Indemnitee under this Agreement for any fees of counsel subsequently incurred by Indemnitee with respect to the same proceeding, provided that (i) Indemnitee shall have the right to employ his counsel in any such proceeding at Indemnitee's expense; and (ii) if (A) the employment of counsel by Indemnitee has been previously authorized by the Company, (B) Indemnitee shall have reasonably concluded that there may be a conflict of interest between the Company and Indemnitee in the conduct of any such defense, or (C) the Company shall not, in fact, have employed counsel to assume the defense of such proceeding, then the fees and expenses of Indemnitee's counsel shall be at the expense of the Company.

## 5. **Additional Indemnification Rights; Nonexclusivity**.

(a) *Scope*. Notwithstanding any other provision of this Agreement, the Company hereby agrees to indemnify the Indemnitee to the fullest extent permitted by law, notwithstanding that such indemnification is not specifically authorized by the other provisions of this Agreement, the Company's Certificate of Incorporation, the Company's Bylaws or by statute. In the event of any change, after the date of this Agreement, in any applicable law, statute, or rule which expands the right of a Nevada corporation to indemnify a member of its board of directors or an officer, such changes shall be, ipso facto, within the purview of Indemnitee's rights and Company's obligations, under this Agreement. In the event of any change in any applicable law, statute or rule which narrows the right of a Nevada corporation to indemnify a member of its board of directors or an officer, such changes, to the extent not otherwise required by such law, statute or rule to be applied to this Agreement shall have no effect on this Agreement or the parties' rights and obligations hereunder.

4

33

(b) *Nonexclusivity*. The indemnification provided by this Agreement shall not be deemed exclusive of any rights to which Indemnitee may be entitled under the Company's Certificate of Incorporation, its Bylaws, any agreement, any vote of stockholders or disinterested Directors, the General Corporation Law of the State of Nevada, or otherwise, both as to action in Indemnitee's official capacity and as to action in another capacity while holding such office. The indemnification provided under this Agreement shall continue as to Indemnitee for any action taken or not taken while serving in an indemnified capacity even though he may have ceased to serve in such capacity at the time of any action, suit or other covered proceeding (the "Indemnification Period"). To the extent that during the Indemnification Period the rights of the then existing directors and officers are more favorable to such directors or officers than the rights currently provided to Indemnitee thereunder or under this Agreement, Indemnitee shall be entitled to the full benefits of such more favorable rights.

6. **Partial Indemnification**. If Indemnitee is entitled under any provision of this Agreement to indemnification by the Company for some or a portion of the expenses, judgments, fines or penalties actually and reasonably incurred by him in the investigation, defense, appeal or settlement of any civil or criminal action, suit or proceeding, but not, however, for the total amount thereof, the Company shall nevertheless indemnify Indemnitee for the portion of such expenses, judgments, fines or penalties to which Indemnitee is entitled.

7. **Mutual Acknowledgement**. Both the Company and Indemnitee acknowledge that in certain instances, Federal law or applicable public policy may prohibit the Company from indemnifying its directors and officers under this Agreement or otherwise. Indemnitee understands and acknowledges that the Company has undertaken or may be required in the future to undertake with the Securities and Exchange Commission to submit the question of indemnification to a court in certain circumstances for a determination of the Company's right under public policy to indemnify Indemnitee.

8. **Officer and Director Liability Insurance**. The Company shall, from time to time, make the good faith determination whether or not it is practicable for the Company to obtain and maintain a policy or policies of insurance with reputable insurance companies providing the officers and directors of the Company with coverage for losses from wrongful acts, or to ensure the Company's performance of its indemnification obligations under this Agreement. Among other considerations, the Company will weigh the costs of obtaining such insurance coverage against the protection afforded by such coverage. In all policies of director and officer liability insurance, Indemnitee shall be named as an insured in such a manner as to provide Indemnitee the same rights and benefits as are accorded to the most favorably insured of (a) the Company's directors, if Indemnitee is a director, or (b) the Company's officers, if Indemnitee is not a director of the Company but is an officer. Notwithstanding the foregoing, the Company shall have no obligation to obtain or maintain such insurance if the Company determines in good faith that such insurance is not reasonably available at an acceptable cost, if the premium costs for such insurance are disproportionate to the amount of coverage provided or are otherwise deemed excessive by the Company in its sole discretion, or if the coverage provided by such insurance is limited by exclusions so as to provide an insufficient benefit, or if Indemnitee is covered by similar insurance maintained by a subsidiary or parent of the Company.

5

34

9/1/24, 3:46 PM  Case 2:24-cv-05615-HDV-MAA   Document 25   Filed 09/06/24   Page 16 of 20   Page ID
sec.gov/Archives/edgar/data/356590/000149315224026664/ex10-1.htm
#:210

9. **Severability**. Nothing in this Agreement is intended to require or shall be construed as requiring the Company to do or fail to do any act in violation of applicable law. The Company's inability, pursuant to court order, to perform its obligations under this Agreement shall not constitute a breach of this Agreement. The provisions of this Agreement shall be severable as provided in this Section 9. If this Agreement or any portion hereof shall be invalidated on any ground by any court of competent jurisdiction, then the Company shall nevertheless indemnify Indemnitee to the full extent permitted by any applicable portion of this Agreement that shall not have been invalidated, and the balance of this Agreement not so invalidated shall be enforceable in accordance with its terms.

10. **Exceptions**. Any other provision herein to the contrary notwithstanding, the Company shall not be obligated pursuant to the terms of this Agreement:

(a) *Claims Initiated by Indemnitee*. To indemnify or advance expenses to Indemnitee with respect to proceedings or claims initiated or brought voluntarily by Indemnitee and not by way of defense, except with respect to proceedings brought to establish or enforce a right to indemnification under this Agreement or any other statute or law or otherwise as required under Section 145 of the Delaware General Corporation Law, but such indemnification or advancement of expenses may be provided by the Company in specific cases if the Board of Directors has approved the initiation or bringing of such suit; or

(b) *Lack of Good Faith*. To indemnify Indemnitee for any expenses incurred by the Indemnitee with respect to any proceeding instituted by Indemnitee to enforce or interpret this Agreement, if a court of competent jurisdiction determines that each of the material assertions made by the Indemnitee in such proceeding was not made in good faith or was frivolous; or

(c) *Insured Claims*. To indemnify Indemnitee for expenses or liabilities of any type whatsoever (including, but not limited to, judgments, fines, ERISA excise taxes or penalties, and amounts paid in settlement) which have been paid directly to or on behalf of Indemnitee by an insurance carrier under a policy of officers' and directors' liability insurance maintained by the Company; or

(d) *Claims Under Section 16(b)*. To indemnify Indemnitee for expenses and the payment of profits arising from the purchase and sale by Indemnitee of securities in violation of Section 16(b) of the Securities Exchange Act of 1934, as amended, or any similar successor statute.

11. **Construction of Certain Phrases**.

(a) For purposes of this Agreement, references to the "Company" shall include, in addition to the resulting corporation, any constituent corporation (including any constituent of a constituent) absorbed in a consolidation or merger which, if its separate existence had continued, would have had power and authority to indemnify its directors, officers, and employees or agents, so that if Indemnitee is or was a director, officer, employee or agent of such constituent corporation, or is or was serving at the request of such constituent corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, Indemnitee shall stand in the same position under the provisions of this Agreement with respect to the resulting or surviving corporation as Indemnitee would have with respect to such constituent corporation if its separate existence had continued.

6

35

9/1/24, 3:46 PM
Case 2:24-cv-05615-HDV-MAA    Document 25    Filed 09/06/24    Page 17 of 20   Page ID #:211
sec.gov/Archives/edgar/data/356590/000149315224026664/ex10-1.htm

(b) For purposes of this Agreement, the term "expenses" shall include all reasonable attorneys' fees, retainers, court costs, transcript costs, fees of experts, witness fees, travel expenses, duplicating costs, printing and binding costs, telephone charges, postage, delivery service fees and all other disbursements or expenses of the types customarily incurred in connection with prosecuting, defending, preparing to prosecute or defend, investigating, participating, or being or preparing to be a witness in a proceeding. Expenses also shall include expenses incurred in connection with any appeal resulting from any proceeding, including without limitation the premium, security for, and other costs relating to any cost bond, supersede as bond, or other appeal bond or its equivalent. Expenses, however, shall not include amounts paid in settlement by Indemnitee or the amount of judgments or fines against Indemnitee.

(c) For purposes of this Agreement, the term "proceeding" shall include any threatened, pending or completed action, suit, arbitration, alternate dispute resolution mechanism, investigation, inquiry, administrative hearing or any other actual, threatened or completed proceeding, whether brought by or in the right of the Company or otherwise and whether civil, criminal, administrative or investigative, in which Indemnitee was, is or will be involved as a party or otherwise, by reason of the fact that Indemnitee is or was an officer or director of the Company, by reason of any action taken by him or of any inaction on his part while acting as an officer or director of the Company, or by reason of the fact that he is or was serving at the request of the Company as a director, officer, employee, agent or fiduciary of another corporation, partnership, joint venture, trust or other enterprise; in each case whether or not he is acting or serving in any such capacity at the time any liability or expense is incurred for which indemnification can be provided under this Agreement, including one pending on or before the date of this Agreement, but excluding one initiated by Indemnitee to enforce his rights under this Agreement.

(d) For purposes of this Agreement, a "Change in Control" shall be deemed to occur upon the earliest to occur after the date of this Agreement of any of the following events:

(i) *Acquisition of Stock by Third Party*. Any Person (as defined below) who, at the time of the signing of this Agreement by all parties to it, is not a Beneficial Owner (as defined below) of more than one percent (1%) of the total issued and outstanding voting securities of the Company, becomes the Beneficial Owner (as defined below), directly or indirectly, of securities of the Company representing 35% or more of the combined voting power of the Company's then outstanding securities;

(ii) *Change in Board of Directors*. During any period of two (2) consecutive years (not including any period prior to the execution of this Agreement), individuals who at the beginning of such period constitute the Board, and any new director whose election by the Board or nomination for election by the Company's stockholders was approved by a vote of at least two-thirds of the directors then still in office who either were directors at the beginning of the period or whose election or nomination for election was previously so approved, cease for any reason to constitute a least a majority of the members of the Board;

7

(iii) *Corporate Transactions*. The effective date of a merger or consolidation of the Company with any other entity, other than a merger or consolidation which would result in the voting securities of the Company outstanding immediately prior to such merger or consolidation continuing to represent (either by remaining outstanding or by being converted into voting securities of the surviving entity) more than 51% of the combined voting power of the voting securities of the surviving entity outstanding immediately after such merger or consolidation and with the power to elect at least a majority of the board of directors or other governing body of such surviving entity;

(iv) *Liquidation*. The approval by the stockholders of the Company of a complete liquidation of the Company or an agreement for the sale or disposition by the Company of all or substantially all of the Company's assets; and

(v) *Other Events*. There occurs any other event of a nature that would be required to be reported in response to Item 6(e) of Schedule 14A of Regulation 14A (or a response to any similar item on any similar schedule or form) promulgated under the Exchange Act (as defined below), whether or not the Company is then subject to such reporting requirement.

For purposes of this Section 11(d), the following terms shall have the following meanings:

(A) "Exchange Act" shall mean the Securities Exchange Act of 1934, as amended.

(B) "Person" shall have the meaning as set forth in Sections 13(d) and 14(d) of the Exchange Act; provided, however, that Person shall exclude (i) the Company, (ii) any trustee or other fiduciary holding securities under an employee benefit plan of the Company, and (iii) any corporation owned, directly or indirectly, by the stockholders of the Company in substantially the same proportions as their ownership of stock of the Company.

(C) "Beneficial Owner" shall have the meaning given to such term in Rule 13d-3 under the Exchange Act.

(e) For purposes of this Agreement, references to "other enterprise" shall include employee benefit plans; references to "fines" shall include any excise taxes assessed on Indemnitee with respect to an employee benefit plan; and references to "serving at the request of the Company" shall include any service as a director, officer, employee or agent of the Company which imposes duties on, or involves services by, such director, officer, employee or agent with respect to an employee benefit plan, its participants, or beneficiaries; and if Indemnitee acted in good faith and in a manner Indemnitee reasonably believed to be in the interest of the participants and beneficiaries of an employee benefit plan, Indemnitee shall be deemed to have acted in a manner "not opposed to the best interests of the Company" as referred to in this Agreement.

8

37

12. **Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall constitute an original.

13. **Successors and Assigns**. This Agreement shall be binding upon the Company and its successors and assigns, and shall inure to the benefit of Indemnitee and Indemnitee's estate, heirs, legal representatives and permitted assigns.

14. **Attorneys' Fees**. In the event that any action is instituted by Indemnitee under this Agreement to enforce or interpret any of the terms hereof, Indemnitee shall be entitled to be paid all court costs and expenses, including reasonable attorneys' fees, incurred by Indemnitee with respect to such action, unless as a part of such action, the court of competent jurisdiction determines that each of the material assertions made by Indemnitee as a basis for such action were not made in good faith or were frivolous. In the event of an action instituted by or in the name of the Company under this Agreement or to enforce or interpret any of the terms of this Agreement, Indemnitee shall be entitled to be paid all court costs and expenses, including attorneys' fees, incurred by Indemnitee in defense of such action (including with respect to Indemnitee's counterclaims and cross-claims made in such action), unless as a part of such action the court determines that each of Indemnitee's material defenses, counterclaims, or cross-claims to such action were made in bad faith or were frivolous.

15. **Notice**. All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed duly given (i) if delivered by hand and receipted for by the party addressee, on the date of such receipt, or (ii) if mailed by domestic certified or registered mail with postage prepaid, on the third business day after the date postmarked, or fifth business day after the date postmarked, if sent to or from a country outside of North America. Addresses for notice to either party are as shown on the signature page of this Agreement, or as subsequently modified by written notice.

16. **Choice of Law**. This Agreement shall be governed by and its provisions construed in accordance with the laws of the State of Nevada, without regard to the conflict of law principles thereof.

17. **Period of Limitations**. No legal action shall be brought and no cause of action shall be asserted by or in the right of the Company against Indemnitee, Indemnitee's estate, spouse, heirs, executors or personal or legal representatives after the expiration of one year from the date of accrual of such cause of action, and any claim or cause of action of the Company shall be extinguished and deemed released unless asserted by the timely filing of a legal action within such one-year period; provided, however, that if any shorter period of limitations is otherwise applicable to any such cause of action, such shorter period shall govern.

18. **Subrogation**. In the event of payment under this Agreement, the Company shall be subrogated to the extent of such payment to all of the rights of recovery of Indemnitee, who shall execute all documents required and shall do all acts that may be necessary to secure such rights and to enable the Company effectively to bring suit to enforce such rights.

19. **Amendment and Termination**. No amendment, modification, termination or cancellation of this Agreement shall be effective unless it is in writing signed by both the parties hereto. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provisions hereof (whether or not similar) nor shall such waiver constitute a continuing waiver.

20. **Integration and Entire Agreement**. This Agreement sets forth the entire understanding between the parties hereto and supersedes and merges all previous written and oral negotiations, commitments, understandings and agreements relating to the subject matter hereof between the parties hereto.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**COMPANY:**  **INDEMNITEE:**

Global tech Industries Group, Inc.,
a Nevada corporation


By: /s/ David Reichman  /s/ Afshin Luke Rahbari
David Reichman, Chief  Afshin Luke Rahbari
Executive Officer

10

34